Shelton *v.* French.

---

### GEORGE P. SHELTON *vs.* RAYMOND FRENCH.

A plaintiff may declare on a bond with condition without noticing the condition, and if the defendant would compel him to assign a breach, he must plead performance generally.

If he pleads the general issue in the statutory form, and gives notice of performance, he secures the privilege of introducing testimony to prove performance, but does not impose upon the plaintiff the duty of assigning the breach relied on.

An agreement "to deliver" personal property for a consideration expressed, imports a delivery which is to pass the title.

Where the court below has found as a fact that a contract is not tainted with usury, such finding is conclusive.

Where a contract provided for the delivery of a bond issued by a railroad company and guaranteed the payment of the bond in full, held that the measure of damages for the breach of the contract to deliver was the value of the bond as thus guaranteed by the defendant, and as against the defendant was the face of the bond and interest.

The pledge of a bond, and as incident thereto of collaterals, is not *per se* a conversion of the collaterals. If the principal bond and the collaterals are redeemed by the obligee of the bond, before maturity, and before suit brought, and are in the hands of the obligee ready to be restored upon the payment of the bond, the obligor has no cause for complaint.

DEBT on a bond for the payment of $2,000, dated November 25, 1857, with the following condition :—

" The condition of this obligation is such, that whereas the said French, in consideration of a valuable sum in money received to his full satisfaction from said Shelton, the receipt of which is hereby acknowledged, has agreed to deliver to said Shelton a certain one thousand dollar eight per cent. bond of the Mobile and Ohio Railroad Company, secured by pledge of income and deposit of mortgage bonds, that are a lien upon the donated lands and all other property of the company, and payable in the city of New York, on the first day of July, 1862, with interest at the rate of eight per cent. payable semi-annually, on the first days of January and July in each year at said New York, and all interest accruing on said bond on and after the first day of January, 1857, shall be due and payable to said Shelton, his heirs and assigns :—Now therefore, if said French shall deliver to said Shelton, his heirs or assigns, the said bond as per said agreement, and provided also that said bond and the interest accruing thereon shall be well and truly paid according to the terms thereof and as above described, then this obligation shall be void, otherwise remain in full force and effect."

The declaration set out only the obligatory part of the bond without the condition. The defendant craved oyer of the bond and set it out with the condition, pleading a general denial, with notice of sundry matters of defense, and among them of full performance. The case was tried in the superior court for New Haven county, on an issue closed to the court, before *Pardee, J.*

Upon the trial the plaintiff proved the execution and delivery by the defendant of the obligation with conditions recited in the oyer, and offered it in evidence. The defendant objected to the admission thereof for the reason that the writing obligatory offered was an obligation with conditions, and therein was variant from the obligation declared on. The court over-ruled the objection and admitted the writing. The plaintiff then rested his case. Thereupon the defendant moved for a non-suit, on the ground that the plaintiff had

proved no breaches of the condition of the obligation and no damage resulting to him therefrom.    The court overruled the motion, and the defendant introduced his evidence in defense. From all the evidence the court found the following facts :—

On the 24th day of April, 1857, the defendant by verbal contract sold and agreed to deliver to the plaintiff a bond of the Mobile and Ohio Railroad Company, of the amount, character and description set forth in the condition to the bond sued upon, and agreed to guarantee the payment of the principal with the interest; the defendant then believing, and continuing to believe up to the time of bringing suit, that such a bond existed ; and the plaintiff on that day paid to the defendant $800, as the price of the bond and guaranty.    This was a sale and purchase of the bond, and not a loan or cover for a loan.    On the day of the sale and purchase, or within a few days thereafter, the defendant placed in the hands of the plaintiff a bond of said railroad company, in all respects like the bond sold, except that the principal and interest were payable in Mobile, to be held by the plaintiff as collateral security for the performance of the contract, and for that purpose it was received by the plaintiff.    Between the 24th day of April, 1857, and the 25th day of November of the same year, the plaintiff made repeated requests of the defendant for the delivery of such a bond as is described in the written obligation, but the defendant did not deliver or offer to deliver any such bond to the plaintiff.    On the last named day the defendant executed and delivered to the plaintiff the written obligation with conditions above set forth as a guaranty of the contract of April 24th ; and between the 25th of November, 1857, and the bringing of the present suit, the plaintiff repeatedly requested of the defendant the delivery of such a bond as is described in the written obligation and condition, but the defendant has never delivered or offered to deliver such a bond to the plaintiff.    The plaintiff has received on the railroad bond held by him as collateral, the coupons falling due respectively on the 1st days of January and July in each year, from July 1, 1857, to January 1, 1861, inclusive, which have been paid and amount to $280.    The remaining

coupons and the principal of the bond are now due and unpaid, and the same are of the present value of $300.

Between the 25th day of November, 1857, and the commencement of the present suit, the plaintiff pledged, without the knowledge of the defendant, the writing obligatory and collateral railroad bond, to one Randall, as security to him for his indorsements of the plaintiff's note for the plaintiff's use and benefit, and Randall held the same as such collateral security during most of the intervening period. The plaintiff redeemed them and has since held them in his possession, and has never offered to return the railroad bond to the defendant, nor has the defendant ever requested him to do so. The defendant claimed that from the appropriation of the coupons and the pledge of the collateral bond to Randall the law would imply a sale of the bond as against the plaintiff, and that under the circumstances it was the duty of the court to find that the plaintiff accepted the railroad bond so pledged by him in lieu of the bond named in the writing obligatory and the condition thereof; or, that the plaintiff would be liable to the defendant for the value of the bond and to have the same set off against any damages the plaintiff might be entitled to recover against the defendant.

The defendant also claimed that in case the plaintiff was entitled to recover the rule of damages should be the market value of the railroad bond at the time of the breach of the condition requiring the delivery of the bond to the plaintiff, with interest on that amount from the date of such breach ; or the amount of money paid by the plaintiff to the defendant, with interest at six per cent. He also claimed, that as the contract stated in the condition required him to pay to the plaintiff $1000 with eight per cent interest thereon, in case he did not deliver the bond, when in fact the defendant had received from the plaintiff but $800, such contract would be usurious, and that the plaintiff would be entitled to recover only the $800, and that the $280 which the plaintiff had received on the coupons should be deducted from the bond.

The court over-ruled the several claims of the defendant and rendered judgment for the plaintiff to recover $1,379.12

damages and costs, having excluded from the damages said sum of $280 received by the plaintiff from the coupons, the judgment being made up as of the 19th day of April, 1866.

The defendant moved for a new trial.

*H. B. Munson* and *H. Stoddard*, in support of the motion.

1. The defendant's notice of performance as one of his defences was equivalent to a plea of performance. Gen. Statutes, 23, sec. 107 ; *Mansfield* v. *Church*, 21 Conn., 73. And a plea of performance throws upon the plaintiff the burden of specifying the breaches on which he intends to insist. Story Pl., §§ 24, 25 ; *Clarke* v. *Mix*, 15 Conn., 185. This being so the plaintiff was bound, if not to assign the particular breach, yet to show it in his proof, and had not made out his case as it stood upon the pleadings by proving the execution and delivery of the bond. The motion for a non-suit was therefore properly made and should have been granted.

2. The contract as stated in the condition of the bond, is not for the sale of the bond but for a delivery merely. What rule of damages could the court adopt for the mere non-delivery of the bond ? But if the contract is held to be for the transfer of the title, how could any damages be assessed until the value of the bond had been proved ?

3. The original verbal contract between the plaintiff and defendant was usurious. For $800 which the plaintiff advanced to the defendant, he was to receive back without risk $1,000 with 8 per cent. interest. The plaintiff advanced the $800 on the strength and faith of the defendant's promise to pay him the $1,000 and the eight per cent. Suppose the defendant had made this same promise absolutely, and there had been no condition for the delivery of a bond, could there be any question that such a contract was usurious ? And if usurious, standing by itself, is it less so because it stands by the side of a bond ?. The court expressly finds that the $800 was the price of the bond and the plaintiff's guaranty ; that is, the price which the plaintiff paid the defendant for promising to repay him $1,000 with eight per cent. The finding of the court that this was a sale and purchase of a bond is not

warranted by the facts found. It is an erroneous conclusion of the judge as to what facts constitute a sale and purchase. A sale of a bond implies a change of title in some particular bond. The court finds also that the plaintiff made repeated requests for (not the bond he had purchased, but) for such a bond, &c. The most that can be said is, that the plaintiff made a contract with the defendant to procure him a bond bearing a greater rate of interest than six per cent., and to guarantee that that bond and that usurious interest should be paid out of his own pocket. And the written bond and contract are subject to the same infirmity. *Wales* v. *Webb,* 5 Conn., 156 ; *Churchill* v. *Suter,* 4 Mass., 162.

4. The court did not adopt the true rule of damages. The value of the railroad bond at the time of the breach was the highest value the court could adopt consistently with either law or equity. In the absence of any proof of the value or existence of the bond in question, the rule of damages would be the $800 advanced with interest. And this is the rule even if the sale and guaranty of the bond be not usurious.

5. The court ought to have made a set-off of the value of the pledged bond. The plaintiff is clearly liable to the defendant for appropriating that pledge, and it is immaterial whether the act was done as under a contract of purchase or as a wrongful conversion for which trover would lie. *Bulkeley* v. *Welch,* 31 Conn., 340 ; *Homes* v. *Crane,* 2 Pick., 610 ; 2 Hilliard on Torts, 249, 254 ; *Wright* v. *Solomon,* 19 Cal., 64 ; *Jarvis* v. *Rogers,* 15 Mass., 389. Whether the pledge of the bond was a conversion so as to render the plaintiff liable for the amount expressed upon its face or not, the appropriation of the coupons was a misuse of the collateral which would render the plaintiff liable for their value to the defendant, and this amount ought to have been set off against and deducted from the debt. *Bulkeley* v. *Welch,* 31 Conn., 339.

*Beach* and *Wooster,* contra, contended that it was a settled practice to declare on bonds without the conditions ; that the defendant had not pleaded performance, but merely given

notice of that defense under a general denial, which did not impose upon the plaintiff the duty of specially assigning the breaches relied on ; that the use made of the collateral bond by the plaintiff was not a conversion of it, it being used only with the principal bond and as collateral to it, which was a use that the plaintiff was authorized to make of it, as it in no way impaired the defendant's right to redeem it, and that it had been returned to and was now held by the plaintiff; that the defendant agreed to deliver to the plaintiff the bond described in the obligation and to guarantee the payment of principal and interest, that the plaintiff paid for such bond and guaranty, and that it would not fulfill the contract to give the plaintiff the market value of the bond with six per cent interest ; and that there was no usury, both because there was no loan, which was essential to usury, and because the court had found that it was not a case of usury and the finding of the court was conclusive.

BUTLER, J. We discover no error in the rulings of the court below.

1. The plaintiff was not bound to assign a breach of the bond. He brought his action, as he well might, on the obligatory part, without noticing the condition. It was competent for the defendant to plead the common law general issue, or the statutory general issue, or performance generally. If he had pleaded performance the plaintiff would have been bound to assign the breach relied on. But the defendant chose to plead the general issue in the statutory form, and give notice of his intended defences. His notice was operative for the purpose of rendering his evidence admissible, but not for the purpose of imposing upon the plaintiff the duty of assigning any breach. The issues which the plaintiff was bound to prove were made by the plea, and that only.

2. For the same reason the non-suit was properly denied. The sole object and effect of the notice of performance, as of the other matters of defence, was to authorize the admission of evidence to prove them under the general issue, if the defendant thought proper to offer it. Such a notice gives the

defendant a privilege, and imposes no duty on the plaintiff. It is sufficient for him to prove the allegations of his declaration put in issue by the plea.

3. The contract specified in the condition of the bond was a sale. Title to personal property passes by delivery, and agreements to " *deliver* " import a delivery which is to *pass the title,* unless there is something in the character of the article or the attending circumstances to qualify the language. Here there is nothing to thus qualify it.

4. The court have found as a fact that the contract was not tainted with usury. That finding of fact is conclusive. If we thought it erroneous we could not review it. If the facts were such that the transaction *must* be holden usurious, *as matter of law,* we might revise the finding of the court on the point. But the facts found are not of that character.

5. The finding of the court in respect to damages was doubtless based on the fact that the defendant guaranteed the full payment of the principal and interest of the Mobile bond contracted for at maturity, as part of the contract, and it had matured before suit brought. If the contract was legal, and one of guaranty as well as sale, there was no good reason to prevent a recovery of damages in the action for breach of the guaranty, as well as the value of the bond. Besides, the value of the Mobile bond to the plaintiff was the value of such a bond guaranteed by the defendant, and it was not for him to say it was not worth the face and interest to the plaintiff, for it was of the essence of the agreement that he should make it so.

6. The defendant was not entitled to the set-off claimed. The only pledge made of the collateral bond was in connection with a pledge of the bond on which this action was brought, and as an *incident security.* That was not, *per se,* a conversion. When the principal bond was redeemed the relative position of the parties was restored. The motion finds that the collateral is in the hands of the plaintiff, ready for delivery when the contract is fulfilled or this judgment satisfied, and a satisfaction will revest the title absolutely in the defendant.

7. If the defendant is right in his claim that the court did not apply the coupons, collected on the collateral, in reduction of damages, then a new trial should be advised, *nisi* the plaintiff will remit a corresponding amount of his damages; but as we understand the motion the amount received for the coupons was, in fact, deducted.

A new trial is not advised.

In this opinion the other judges concurred.