JOHN A. GILCHRIST *v.* GEORGE HILLIARD, APPELLANT.

*Implied Warranty in Sale of Accounts.*

1. There is an implied warranty in the sale of accounts that they are genuine and real; and that they are what they appear to be,—accounts, due and owing.
2. There is an implied warranty in every sale that the thing sold is that for which t was sold; that it is substantially what it was described and purported to be.

THIS was an action on the case for false warranty in the sale of a lot of accounts. Trial by the court, on the general issue. June Term, 1880, Ross, J., presiding. It appeared in evidence that

the defendant owned a stallion at Barnet during a portion of the season of 1876, and that one William C. Gleason of said Barnet, of whom he purchased the horse that spring, had charge of said horse for the defendant, and was his agent for the purpose of making trades for the use of said stallion for mares, the defendant residing at Canaan, Vt., and not having any charge of said stallion while he was kept at Barnet. The defendant took said stallion to Canaan about the 1st or 2d of July. During the time said stallion was kept at said Barnet that season, said Gleason had used him to about fifty mares in that vicinity and in surrounding towns, and had a list of accounts against various parties for the use of said horse.

On the 6th day of September, 1876, the defendant came to McIndoes Falls, and told the plaintiff that he had a lot of accounts for the use of said horse, which he wanted to sell, as he could not collect them as well, not living at Barnet and not knowing the parties. The plaintiff told the defendant that he had a horse he would trade for them, if they were all right. The defendant produced the list of accounts, and the plaintiff looked it over, and knew the financial standing of nearly all the names on the list, and asked the defendant if the accounts were all right. The defendant told him he didn't personally know anything about them, and then asked Gleason, who was present, and he said all the five dollar accounts were for the use of the leap and were due, and all the eight dollar ones were to insure the mare with foal, except a few which were warrants that the mare should have a sound, live colt that would get on his feet and suck. The defendant then took a pencil and marked those which were called warrants, and said there might be two or three more warrants. The plaintiff bought said accounts of the defendant, supposing that they were as represented by said Gleason, and relying upon his statement in regard to them, giving a horse which he called worth $150, and his note for $25, and the defendant then assigned said accounts in writing to the plaintiff on the back of said list of accounts, and signed it.

When the plaintiff commenced to collect said accounts he ascertained that by the trade Gleason had made with the parties,

none of said accounts were due unless the mares had colts, and there were only three colts, and consequently only $15 on the list of accounts that were due or owing to the defendant; and said Gleason knew that several of the mares were brought back after the horse was taken away, and that they were not with foal. Said accounts would have been worth in the vicinity of $200 if they had been due, as the plaintiff understood when he bought them, but in fact they were worth only said sum of $15. The defendant did not know in fact but that said accounts were due, as said Gleason told the plaintiff at the time he sold them, and he sold them supposing that Gleason was stating the matter correctly; and the court finds the fact that Hilliard believed his representations to be true, and had no reason to suppose the contrary. It was claimed by the plaintiff that the defendant, in law, should be bound by the knowledge and representations of Gleason, notwithstanding he had not actual notice, that said accounts were not due except upon a contingency, but the court ruled otherwise.

Gleason was not the defendant's agent in making the sale, and had nothing to do about it, except, being present, stated to both the plaintiff and defendant, how he understood the accounts; and the plaintiff relied on his statement. It was not claimed that the horse did not serve mares in all cases for which charges are made. It was also claimed by the plaintiff that the assignment of the accounts being in writing on the back of said list, and signed by the defendant, was in law a warranty that the accounts were valid and without depending on a contingency, and actually due from the several parties as appeared on the list, but the court ruled otherwise. The assignment being in writing, defendant objected to all parol evidence of a warranty, and the court ruled it inadmissible.

The defendant's evidence tended to prove that the horse plaintiff let defendant have, was of no value whatever. Plaintiff's evidence tended to prove he was a valuable horse. The court were of opinion that the horse was worth very little; but did not deem it important to decide his precise value. At the end of the accounts, (some fifty in number,) was the following written assignment:

Gilchrist *v.* Hilliard.

SEPTEMBER 6, 1876.    I hereby assign the within account to John A. Gilchrist.    (Signed)    GEORGE HILLIARD.

On the above facts the court rendered judgment for the defendant to recover his costs.

*W. E. Smith,* for plaintiff.

The knowledge of the agent is the knowledge of the principal, and taking the consideration, he is holden. Story on Agency, 140 ; *Hovey* v. *Blanchard,* 13 N. H. 145 ; *Patten* v. *Ins. Co.,* 40 Ib. 375 ; *Abell* v. *Howe,* 43 Vt. 403 ; *Fitzherbert* v. *Mather,* 1 Term, 10 ; 34 E. C. L. 22 ; *Keyes* v. *Carpenter,* 3 Vt. 209. The same rule should be applied here as in the assignment of a note ; the assignment is a direct affirmation that they are what they purport to be,—valid accounts. *Thrall* v. *Newell,* 19 Vt. 209 ; *Bridge* v. *Wain,* 1 Starkie, 504 ; 7 E. C. L. 82 ; 24 Eng. L. & Eq. 150 ; 33 Wis. 622 ; *Sherman* v. *Johnson,* 56 Barb. 59,—sale of account; 12 Wis, 241 ; 51 Ill. 225.

*Leslie & Rogers* and *L. P. Poland,* for defendant.

The contract of sale contains no warranty, and parol evidence is not admissible to prove it. *Reed* v. *Wood,* 9 Vt. 285 ; *Bond et al.* v. *Clark,* 35 Vt. 577. There is no implied warranty. *Reed* v. *Prentiss,* 1 N. H. 174 ; Chitty on Cont. (8 Am. ed.) 390. To sustain an action for deceit, plaintiff must prove false representations ; that defendant *knew* them to be false ; and that plaintiff relied on them. *Bond et al.* v. *Clark, supra.* The mere stating one's *understanding* and *belief,* or *giving* an *opinion,* is not actionable.

The *scienter* must be distinctly *proved,* and *found* by the court.

The opinion of the court was delivered by

ROYCE, J.    The accounts that the defendant sold and assigned to the plaintiff were, for all but $15, worthless at the time of the sale ; not on account of the insolvency of the parties that they were represented to be against, but for the reason that the defendant had no valid accounts against the persons whose names appeared as his debtors upon the list of accounts assigned.

In Long on Sales, 204, it is said that there is an implied warranty in every sale that the thing sold is that for which it was sold, or answers substantially to that description or representation. In *Bank of St. Albans* v. *Farmers & Mechanics' Bank*, 10 Vt. 145, the court say, that : " it seems now well settled that a person giving a security in payment, or procuring it to be discounted, vouches for its genuineness." In *Thrall* v. *Newell*, 19 Vt. 202, which was an action upon an alleged warranty that a note which had been transferred to the plaintiff was a good and valid note, and alleging that one of the makers had recovered a judgment in a suit upon the note, upon the ground of his insanity at the time he signed it, although an express warranty was found, and a recovery had upon that ground, the court strongly intimate that a recovery might have been had upon an implied warranty. They say, that if one or both of the signatures to the note disposed of by the defendant had been forgeries, there would seem to be no question but that the defendant would be liable on an implied warranty. If the law would imply a warranty in such a case, why would not the same implication be made upon the sale of a fictitious chose in action ? Here the accounts sold had no existence. The contingency upon which they were to become valid never happened, and the defendant was bound to make them what they appeared to be,—accounts, due and owing. He was not relieved from liability to that extent by anything that appears to have transpired between the parties and Gleason. If the liability of the defendant were dependent upon the question of fraud in the sale, it might merit a different consideration. Upon the case as presented, the defendant is liable upon an implied warranty.

The damages not having been certainly assessed in the County Court, so that a final judgment can be rendered, the judgment is reversed and cause remanded.