(114 So. 179)

### MOBILE, M. & G. S. S. CO. v. POSTAL TELEGRAPH–CABLE CO.
### (1 Div. 726.)

Court of Appeals of Alabama. Aug. 2, 1927.

Rehearing Denied Oct. 4, 1927.

SAMFORD, J. The complaint was in two counts as follows:

"First count. The plaintiff claims of the defendant $1,000 damages for that said defendant, being then and there engaged in the business of transmitting messages by telegraph, did for a reward on the 24th day of February, 1926, receive and accept from plaintiff's agents, the Waterman Steamship Corporation, at defendant's office in Mobile, for transmission to Boca Grande, Fla., and delivery there to Capt. Galloway, steamship Lake Benton, the telegraph message following; that is to say: 'Captain Galloway, S/S Lake Benton, Boca Grande, Florida. Commissioner of navigation has authorized transfer for sixty tons fuel Hilversum to Lake Benton notified collector Tampa accordingly endeavor transfer coal immediately and sail to-night advise, Waterman.'

"And plaintiff avers that said defendant did not correctly transmit to the said master of plaintiff's said steamship the said message, but transmitted and delivered to him instead thereof the following; that is to say: 'Captain Galloway, S/S Lake Benton, Boca Grande, Florida. Commissioner of navigation has authorized transfer for fifty tons fuel Hilversum to Lake Benton notified collector Tampa accordingly endeavor transfer coal immediately and sail to-night advise, Waterman.'

"And plaintiff avers that it is and was then and there the owner and operator of the said steamship, and that said vessel had proceeded to and lay in the port of Boca Grande in need of coal to enable her to proceed therefrom to Mobile, her destination, of all which it was duly advised, and that plaintiff's said agents had, as was indicated by the message as received from them by said telegraph company, effected an arrangement with the proper authority whereby said plaintiff's said ship could and should receive a supply of fuel adequate to enable her to go forward on her voyage, but by reason of the said error in the transmission of said message the master of the Lake Benton got from the Hilversum only 50 instead of 60 tons of coal, and in consequence ran short of fuel on her way to Mobile and was delayed, and, to enable her to fetch near to the entrance to Mobile Bay, it became necessary for said vessel to burn in her

furnaces many hatch covers, battens, and bunker boards and much dunnage, and, besides losing much time therefrom, it had to be towed at great expense to Mobile by a steamtug employed and paid for that purpose by plaintiff.

"And plaintiff avers that it was further damaged by the consequent loss of the use of the said vessel during such delay of said voyage and her re-equipment, and was put to great expense for said tug towage and for radiograms necessitated by her said delay and the supplying of the consumed articles named, all to plaintiff's damage as aforesaid.

"Second count. Plaintiff claims of defendant, a corporation then and there engaged in operating a telegraph line for reward, $1,000 damages for the breach by defendant of its undertaking with plaintiff through plaintiff's agent, to well and truly transmit to one Galloway, who was then and there master of plaintiff's steamship Lake Benton, then lying in the port of Boca Grande, Fla., in need of coal, a message delivered to it (said defendant) at Mobile, Ala., on behalf of plaintiff by its agent Waterman Steamship Corporation, which message as so received on February 24, 1926, by said defendant was in words and figures as follows; that is to say: 'Commissioner of navigation has authorized transfer sixty tons fuel Hilversum to Lake Benton notified collector Tampa accordingly endeavor transfer coal immediately and sail tonight advise'—which message the defendant altered and delivered to said master of said steamship a purported telegram in the words and figures following; that is to say: 'Commissioner of navigation has authorized transfer for fifty tons fuel Hilversum to Lake Benton notified collector Tampa accordingly endeavor transfer fuel coal immediately and sail to-night advise'—which purported instructions as contained in said delivered erroneous message were acted upon by said master who got from the Hilversum 50 tons instead of the 60 tons of fuel coal, which but for said telegraphic error could and would have been obtained then and there from said Hilversum, and the Lake Benton sailed for Mobile with said 50 tons only.

"And plaintiff avers that, if 60 tons of coal had been taken at Boca Grande, the said Lake Benton would have safely reached Mobile, her destination, the same being the reasonable and customary allowance for such vessel's passage and hence the amount so arranged for; but, as plaintiff avers, the vessel, before completing her passage, exhausted the coal and in consequence had to reduce speed, burn up for fuel much of her equipment, to wit, hatch covers, batten boards, and dunnage to enable her to get so far along as off the mouth of Mobile Bay, from which point plaintiff was put to the expense and charge of towing said vessel to Mobile and lost the use of said vessel during said delays, from slow steaming, and lost the towage charges incurred and paid by plaintiff and the further delay and expense for outfitting with replaced batten boards, hatch covers, and dunnage, all to its damage as aforesaid."

To these counts defendant filed demurrers to the effect that the complaint is defective in the following particular, to wit: Damages claimed are speculative; do, not generally result in the usual course of things from alleged breach; damages claimed not within contemplation of parties; not such

as arise proximately from the breach; damages are accidental and not likely to ensue from the breach; not natural and proximate consequences of breach; that master of vessel knew amount of coal named in the telegram as delivered was not sufficient for voyage; and that loss, if any, resulted from act of master in sailing with insufficient amount. The points of decision will be confined to the questions raised by the demurrers.

By the demurrers, the defendant admits a contract with plaintiff to deliver a telegraphic message from it to the captain of its vessel, the Lake Benton, at Boca Grande, Fla.; that the message contracted to be delivered read as stated in the complaint; a breach of that contract on the part of defendant by naming 50 tons of coal instead of 60. The question then is, Are the damages claimed the proximate result of the defendant's breach; were they within the contemplation of the parties; and, if so, are they such damages as that they may be recovered in this action? It is clear to us that whatever damages the plaintiff sustained were the direct result of the action of the captain of plaintiff's vessel in sailing without a sufficient supply of coal. Was this act of the captain proximately caused by the breach of the contract complained of? The captain received orders from the owner to take on fuel and to sail; the owner assumed the responsibility of naming the amount of fuel necessary; the defendant assumed the obligation to deliver the order as written, and it was within the contemplation of the parties that the captain of the vessel would obey his order, that the vessel would be required to travel a distance equal to the distance which 60 tons of coal would carry it under usual conditions, and that, if a less amount of coal was taken on as fuel, there would be a shortage in the distance by that much, in which case there would be a resultant damage. The defendant knew that the vessel was to put to sea bound for some port, where it would take at least 60 tons of coal to drive her. It was therefore bound to have been contemplated by the parties that a shortage of 10 tons of fuel would leave the vessel far from port and at the mercy of wind and wave, unless a substitute for this shortage was found—in this case hatch covers, batten boards, etc. It was also within the contemplation of the contract that, if such breach occurred as is here claimed, the vessel would resort to radiograms and tugs, in order to save itself from destruction. Certainly the use of the vessel for the delayed time is easily ascertainable. It would make no difference whether defendant knew the vessel was to proceed to Mobile or not, or whether the vessel already had aboard fuel coal. The contract contemplated a voyage including a distance which

required 60 tons of coal more than it then had, whether that be much or little.

 It is the law, as stated in appellee's brief, that no damages are recoverable for breach of contract except such as reasonably arise naturally from the breach or such as may reasonably be supposed to have been in the contemplation of the parties at the making of the contract as the probable result of such breach. Western U. Tel. Co. v. McMorris, 158 Ala. 563, 48 So. 349, 132 Am. St. Rep. 46; Frazer v. W. U. Tel. Co., 84 Ala. 487, 4 So. 831; Western Railway of Alabama v. Mutch, 97 Ala. 194, 11 So. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179. So that we must turn to the complaint to see if the allegation squares with the rule just stated. The breach of the contract to transmit the message being admitted, what damages reasonably arose naturally from the breach? The captain obeyed orders; he loaded the fuel named in the message delivered to him; he sailed that night towards the port to which he was ordered; and, by reason of defendant's breach, the insufficiency of fuel left his vessel at the mercy of the sea and short of his destination. The owner had provided sufficient fuel. The wrong of defendant denied him this. The resultant damage was that part of the equipment of the ship used as a substitute for the 10-ton shortage of coal in an effort to make port, the reasonable expense incurred in having the ship towed, the reasonable value of the rental of the vessel for the period of delay. All of these are of easy ascertainment, with no such uncertainty as to render them speculative. And it is the declared law of this state that every person is entitled on breach of a contract to full compensatory damages. Western U. Tel. Co. v. Westmoreland, 151 Ala. 319, 44 So. 382; Buist v. Guice, 96 Ala. 255, 11 So. 280.

There is no place in this case for the rule, "De minimis non curat lex." If the plaintiff can recover at all, its damages will be substantial.

 Grounds 7 and 8 of the demurrers were an effort interposed by way of demurrer, a defense to the action which can only be done by plea. This is sometimes called "a speaking demurrer," and is never allowed.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.