138 So. 282

## KENNEDY v. HUDSON.

### 3 Div. 960.

Supreme Court of Alabama.

June 18, 1931.

Rehearing Denied Oct. 15, 1931.

Further Rehearing Denied Dec. 17, 1931.

Ball & Ball, of Montgomery, for appellant.

18

Steiner, Crum & Weil, of Montgomery, for appellee.

## THOMAS, J.

The suit grew out of the indorsement of a promissory note and the assignment of an alleged mortgage on real property securing the same.

The assignment of Hudson to Kennedy, indorsed on the mortgage, was "for and in consideration of the sum of Twelve Hundred and fifty dollars to me this day in hand paid by A. M. Kennedy, the receipt of which I do this day acknowledge and I do hereby transfer and assign to the said A. M. Kennedy that certain debt, note and mortgage, as herein described, and for the same consideration and without recourse on me, I do hereby grant, bargain, sell and convey unto the said A. M. Kennedy their heirs and assigns all of my right, title and interest in and to the real estate described in the within mortgage"; and duly acknowledged before a notary public. It is not ambiguous, and included the note and mortgage on like consideration and limitation. However, the evidence, if it be looked to on this point, supports the same intention and result. The note is: "Endorsements: For value received I hereby transfer this note to A. M. Kennedy. R. F. Hudson.

Extended 12 mos to 12/28/28." This notation of extension we judicially know to have been "December 28, 1928," and will be taken and considered with the indorsement on the mortgage. The sale, conveyance, and assignment were one transaction, and are considered together in the ascertainment of the true intent of the contracting parties. The transfer of the note and mortgage was qualified. Section 9064, Code; Shows v. Jackson, 215 Ala. 256, 110 So. 273; Faulkner v. Fowler, 201 Ala. 685, 79 So. 257.

Did or did not this indorsement and transfer of the note or mortgage import and vouch for the genuineness of same?

The suit was for recovery of the price paid for the transfer and assignment of the nonnegotiable chose in action, and the pleading was in short with leave to give in evidence all matters that may be specially pleaded. There are citations in briefs of counsel to the Negotiable Instrument Act. Sections 9064, 9091, 9141, Code. The due date of the instruments in question was December 28, 1924, and the transfer and assignment was of date of March 5, 1926. If the cited sections of the Negotiable Instrument Act be laid out of consideration as to said transfer and assignment of said choses in action, for that the transfer was after the law day thereof, and as not affecting the right of transferor and transferee, the general rule of the transfer of such instruments would prevail in the absence of statutory provisions. Many authorities are collected by Mr. Brannan in support of his observation that "this act does not affect the rights of parties to non-negotiable instruments." Brannan's Negotiable Instruments Law Ann. p. 1.

The provisions of our statute, section 9226 et seq., Code, that relate to assignments of nonnegotiable instruments, "Liability and Mode of Charging Indorsers or Assignors of Bills and Notes or Contracts Not Negotiable," contain the provisions that all contracts assigned by writing which are not governed by the commercial law, when the amount due exceeds $100, in order that the indorser or assignor be charged, suit must be brought against the maker to the first court to which suit can be properly brought after making the indorsement or assignment (section 9226, Code); unless suit is waived by written consent (section 9227, Code); or there is the required statutory excuse for not suing "the maker" (section 9228, Code); and the provision that all assignments or indorsements in the writing "of contracts" which are not governed by the commercial law, "whether regular or irregular, must be construed as within the meaning of the last three sections, unless the contrary clearly appears from such assignment or indorsement" (section 9229, Code); and all bonds, contracts, and writings for the payment of money or other thing, or

the performance of any act or duty, are assignable by indorsement so as to authorize an action thereon "by each successive indorsee." Section 9231, Code.

If we may look to the rule of law generally obtaining in such matter, it may be noted that in Brannan's Negotiable Instruments Law (4th Ed.) p. 605, is the observation:

"The right of the purchaser of a worthless or unenforceable instrument to rescind the purchase for fraud, misrepresentation, or mutual mistake of fact is independent of his right against the seller on an implied warranty. It depends on common-law principles of rescission, and may exist on grounds which do not create any liability for implied warranty under sec. 65, just as the similar right of the purchaser of a chattel to rescission for fraud, misrepresentation, or mistake, is not coextensive with his remedies under the Uniform Sales Act upon implied warranties.

"(a) The transferor by delivery of a forged note is not released from liability as warrantor by the act of the transferee in receiving interest from the alleged maker and extending the note, without the consent of the transferor, all the parties being still in ignorance of the forgery. Cluseau v. Wagner, 126 La. 375, 52 So. 547. [We interpolate this was under the statute, Civil Code La. Art. 2646.]

"Where a check on which the payee's indorsement was forged has been several times transferred by indorsement, each indorsee may recover from his immediate indorser. Main St. Bk. v. Planters' Nat. Bank, 116 Va. 137, 81 S. E. 24. The court cited sec. 65, but as the indorsements were unqualified, it should have cited sec. 66.

"A dealer in real estate who sold to the plaintiff forged notes indorsed in blank by the payee was liable on an implied warranty of genuineness if he sold the paper as owner or as agent of an undisclosed principal, even though the defendant was ignorant of the forgery and made no representations to the plaintiff. Hunt v. Sanders, 288 Mo. 337, 232 S. W. 456."

The rule of general authorities is thus stated in 2 R. C. L. p. 627, § 37: "Even where the words 'without recourse' are added in an assignment of a chose in action, there still remains an implied warranty that the right transferred is what it purports to be, namely, that it is a valid and genuine obligation of the parties, based on adequate and sufficient consideration, and that the amount of money it calls for was owing, and unpaid at the time of the assignment. For the same reason the assignment of a right of action implies a warranty that it was not invalid in its inception by reason of its having been procured through fraud and deceit, and that it is not affected with usury. Since a warranty of title is implied on the sale of a non-negotiable

chose in action, the assignee, if it is a nullity, is entitled to recover the price, although the seller was innocent of any fraud, and ignorant of the defect."

The general statement in 4 Cyc. page 82 is: "In the absence of an express warranty, the assignor of a chose in action, for a valuable consideration, impliedly warrants to the assignee that the chose assigned is a valid, subsisting obligation in his favor against the debtor to the extent to which it purports to be such. If the assigned chose is invalid then the warranty is broken as soon as it is made, and the assignee need not wait until the maturity of the chose, but may sue the assignor thereon at once, and need not return the assigned chose. The measure of the assignee's damages for breach of such warranty is, generally, the amount he paid the assignor for the chose."

The decision in Young v. Perry, 187 Ala. 122, 65 So. 817, 52 L. R. A. (N. S.) 1146, contains excerpts to like effect, from 2 Randolph's Comm. Paper, § 913, and 2 Daniel's Neg. Instr. § 1314. See, also, vol. 1, § 675.

Such is the rule in Georgia, Illinois, Iowa, Kentucky, New York, and Vermont. The rule in Pennsylvania, Virginia, and West Virginia is to the effect that, if the assignment is without recourse, no warranty will be implied. Flynn v. Allen, 57 Pa. 482; Crawford v. McDonald, 2 Hen. & M. (Va.) 189; Houston v. McNeer, 40 W. Va. 365, 22 S. E. 80.

The text of 5 Corpus Juris, pp. 968, 970, and 971, supported by many authorities, is:

"Where the assignment is without recourse, according to some authorities, no warranty of title or genuineness is implied, and, in the absence of fraud, the assignor is not liable to the assignee; but in other cases it has been held that the assignor without recourse is liable upon an implied warranty that the chose is a valid and subsisting debt, and that the only effect of the qualification of his assignment is to relieve the assignor from responsibility for the solvency of the debtor."

"In Maxfield v. Jones, 106 Ark. 346, 350, 153 S. W. 584 (where the written contract of assignment stated in express terms that the assignment was 'without recourse' on the assignor, and that it was a transfer merely of all of the right of the assignor in and to the claim. This form of assignment relieved the assignor of any liability to plaintiff's for the failure to realize on the claim'); Coffman v. Allin, Litt. Sel. Cas. (Ky.) 200; Flynn v. Allen, 57 Pa. 482; Crawford v. McDonald, 2 Hen. & M. (12 Va.) 189."

See Strong v. Leoffler, 85 Ill. 73, a tax receipt that was forged; Hunt v. Burk, 22 Ga. 129, illegal contract; Tyler v. Bailey, 71 Ill. 34, counterfeit land warrants; McCormack v. Reece, 3 G. Greene (Iowa) 591, subscriptions

for street improvements; Winstell v. Hehl, 6 Bush (Ky.) 58, assigned lease; Emmerson v. Claywell, 14 B. Mon. (Ky.) 18, 58 Am. Dec. 645, assigned bond; Hunt v. Armstrong, 5 B. Mon. (Ky.) 399, assignment of notes; Kingsley v. Fitts, 55 Vt. 293, on sales account; Gilchrist v. Hilliard, 53 Vt. 592. 38 Am. Rep. 706, sales account warranted genuine; Wait v. Williams, 107 S. C. 32, 91 S. E. 969, note and mortgage; Sanford v. Weller (Tex. Civ. App.) 189 S. W. 1011; 4 Cyc. 82; R. C. L. (Perm. Supp.) p. 522, § 36.

In Wait v. Williams, 107 S. C. 32, 91 S. E. 969, 970, the court observed:

"An assignment of a chose in action, without recourse, relieves the assignor of the general liability of an indorser; but, in the absence of any further limitation of his liability, he is liable upon the implied warranties of a vendor, who impliedly warrants that the thing sold is what it purports to be—in this instance, that the note and mortgage were valid subsisting legal obligations for the amount called for by the note, and the property described in the mortgage. Strange v. Ellison, 2 Bailey [S. C.] 385; Hall v. Latimer, 81 S. C. 90, 61 S. E. 1057; Bank v. Speegle, 91 S. C. 13, 74 S. E. 40. But there is no implied warranty of the solvency of the mortgagor, or of the value of the property described in the mortgage. The law is stated in 2 R. C. L. at page 627:

" 'Even where the words "without recourse" are added in an assignment of a chose in action, there still remains an implied warranty that the right transferred is what it purports to be, namely, that it is a valid and genuine obligation of the parties, based on adequate and sufficient consideration, and that the amount of money 'it calls for was owing and unpaid at the time of the assignment.'

"The authorities cited in the note fully sustain the text. See especially the case of Trustees v. Siers, 68 W. Va. 125, 69 S. E. 468, Ann. Cas. 1912A, 924, and the authorities cited in the principal case, and the note reviewing the authorities."

In Griel v. Lomax, 86 Ala. 132, 135, 5 So. 325, 326, the action was for money paid on the purchase of an interest in land. The court said: "The contract purports on its face to be nothing more than the transfer and assignment by Griel to Lomax and his associates of all of the assignor's 'right, title, and interest' in a certain piece of real property, which one Moses had contracted to sell and convey to said Griel and two other named persons as his co-vendees. There are no words of warranty used, and no covenant of seisin or of future enjoyment is stipulated for in the contract of assignment. Where this is the case, the rule is the same in the sale of an interest in land as of goods, where the vendor is out of possession. The doctrine of caveat emptor applies, and the buyer, having neglected to protect himself by a warranty, in the absence of fraud, will be held by the court to have purchased at his peril." This rule was again applied in Carrier v. Eastis, 112 Ala. 474, 20 So. 595.

And in Commercial Credit Co. v. Ward & Son Auto Co., 215 Ala. 34, 109 So. 574, the action was under section 9064, Code, and dealt with a negotiable instrument before law day, and held that the transferor warrants that antecedent parties are legally capable of binding themselves. 8 C. J. 395, § 583.

In Birmingham Nat. Bank v. Bradley, 103 Ala. 109, 119, 15 So. 440, 49 Am. St. Rep. 17, the check was forged and the indorser held as guarantor of its genuineness; and Bankhead v. Owen, 60 Ala. 457, held that the transferor of a note by delivery implies an obligation to answer for the genuineness of the same. Young v. Perry, supra.

It would appear that the weight of authority in this and other jurisdictions, both parties being ignorant of the fraud and forgery in the making of said instrument. would support the holding that the transferor of the forged note and mortgage is liable for their genuineness, and therefore for the purchase price, if rescission is seasonably made.

The provisions of section 9226 et seq. of the Code do not change the result by reason of the failure to sue at an earlier date, etc. Here there was no contract to be sued on and no maker to proceed against at the first term of the court. There is no laches shown to defeat recovery.

The judgment of the circuit court is reversed and one here rendered for the plaintiff.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

### On Rehearing.

PER CURIAM.

The judgment here should be modified so as to eliminate attorney's fee and the waiver of exemption. It was never in contemplation of the parties that the attorney's fee could be recoverable out of an indorser on the note alleged and shown to have been the product of forgery—"in fact no note at all," as properly insisted by appellee's counsel on application for rehearing. In respects indicated—as to waiver of exemption (Shows v. Jackson, 215 Ala. 256, 110 So. 273, and authorities cited) and the addition of attorney's fee, now to be eliminated—the judgment rendered here is corrected, the cost of rehearing taxed against appellee, and the application for rehearing is overruled.

ANDERSON, C. J., and THOMAS, BROWN, and FOSTER, JJ., concur.

### On Further Rehearing.

PER CURIAM.

The case was put on rehearing by the court for consideration of the measure of damages under the evidence disclosed, and is now further considered on the time in which interest would be computed.

It is established that where a tort action is waived and that action upon a contract, express or implied, is maintained, the measure of damages is governed by the rules applicable to like actions on contracts. Where the contract is to deliver notes, the measure of damages for the breach, in the absence of any further proof of the value of the notes, is their face value with interest. Caldwell v. Kuykendall, 94 Okl. 84, 221 P. 84; Bowman v. Branson, 111 Mo. 343, 19 S. W. 634; Wasser v. Western Land Sec. Co., 97 Minn. 460, 107 N. W. 160. We will advert to the time for which interest is recoverable. And where the agreement is for the amount supposed to be secured by mortgage and with no personal obligation or other liability (than that implied in the assignment without recourse), the measure of damages for a failure to perform has been declared to be the amount of the mortgage, Wilson v. Clark, 63 Wash. 136, 114 P. 916; or on contract, for the delivery of a bond guaranteed of payment at maturity, the measure of damages for the breach held to be the face of the bond with interest, Shelton v. French, 33 Conn. 489; and on a contract to return securities on demand, the measure of damages for the breach, held the value of the securities at the date of the contract with interest from the date or failure or refusal, Pabbet v. Belding, 1 Root (Conn.) 445; 17 C. J. 867, § 178. It is further declared that for the breach of a contract to repurchase stock of a corporation on extension of time therefor, damages must be assessed on the basis of the value of the stock at the time of the breach of the amended contract, and not at the time originally fixed. Sibley v. Barclay, 14 Ala. App. 422, 70 So. 201; Smith v. Dunlap, 12 Ill. 184, 193.

In this jurisdiction the damages for the breach of a contract should restore the injured party to the condition he would have occupied if the contract had been fully performed. Nunnally Co. v. Bromberg & Co., 217 Ala. 180, 115 So. 230; Snodgrass, King's Adm'r v. Reynolds, 79 Ala. 452, 458, 58 Am. Rep. 601; 62 A. L. R. 1311, note. That is, for such loss as may be the natural and direct consequences of the breach of contract, full compensatory damages in contemplation of the parties are recoverable for the breach. Mobile, M. & G. S. S. Co. v. Postal Telegraph-Cable Co., 22 Ala. App. 207, 210, 114 So. 179; Id., 216 Ala. 576, 114 So. 181; Western Union Tel. Co. v. Westmoreland, 151 Ala. 319, 44 So. 382; Buist v. Guice, 96 Ala. 255, 11 So. 280.

It is further declared that the measure of damages for the breach of contract to pay money is ordinarily the principal and interest, unless the obligation to pay is special and refers to other objects than the mere discharge of the debt, in which case special damages may be recovered according to actual injury sustained. Bixby-Theirson Lumber Co. v. Evans, 167 Ala. 431, 52 So. 843, 140 Am. St. Rep. 47, 29 L. R. A. (N. S.) 191 and notes. That is the saying—within the contemplation of the parties—that the amount of the money lost with interest is the limit of recovery for the default in payment of money (Pyle v. Pizitz, 215 Ala. 398, 402, 110 So. 822); any other damages being considered remote, speculative, and unrecoverable.

Such being the recognized rule, the consideration paid for the transfer and assignment of writings (in evidence) for the security and payment of money being shown by the evidence, we hold that where documents (as these) are not genuine by the product of forgeries, the recited consideration makes a prima facie case of the measure of damages. Such inquiries as whether such purported maker and grantor, or his ownership of the alleged properties embraced in the mortgage, or its value at the time of the assignment, or the ability of such maker to respond to judgment for such amount if it had been his undertaking to pay and discharge in money according to the tenor of the instrument, are inquiries beside the issues of fact for decision.

To accede to the contention made as to measure of damages as next above adverted to, would destroy the guaranty on which the contract of transfer and assignment was made —that there was the purported maker and security described. We are not now considering values of property, or the credit or judgment liability of the maker, but that of the implication of genuineness imported by the acts of transfer and assignment on which the recited consideration as shown by the evidence was paid.

In the case of Fogleman v. National Surety Co., 222 Ala. 265, 132 So. 317, there was a marshaling of assets among certain persons defrauded under color of office and by notary, and protected by his official bond and suretyship of the defendant thereon. In such a case the equities of the several innocent mortgagees who were respectively defrauded, and the liability on the official bond of the notary by the surety company, were declared, and the measure of damages for the fraudulent misrepresentations to the mortgagees was declared to be such as would, as nearly as possible, place the several defrauded mortgagees in the positions they would occupy, if representations of the notary were true; and the facts of amounts and of security vel non or its defective title in the

mortgagors were held pertinent inquiries as touching the equities (within the amount of the official bond) of the several parties interpleaded. It was a question of making good false certificates or representations made to the several mortgagees there considered, and, therefore, a different measure of damages as to each mortgagee to be prorated within the amount of the official bond.

 The plaintiff is entitled to the purchase price, with interest from the date of payment.

The application for rehearing is denied.