**ALLIED BUILDING CREDITS, INC.,**
Appellant,

v.

**GROGAN BUILDERS SUPPLY CO.,**
Appellee.

No. 14077.

Court of Civil Appeals of Texas.

Houston.

Feb. 14, 1963.

Rehearing Denied March 14, 1963.

Carl & Lee, Emory T. Carl, Houston, for appellant.

William H. Scott, Jr., Houston, for appellee.

WERLEIN, Justice.

This is a suit for an accounting brought by appellee, Grogan Builders Supply Co., sometimes referred to as "Dealer," against appellant, Allied Building Credits, Inc., sometimes referred to as "ABC." On September 27, 1951, Allied and Grogan entered into a dealer participation plan agreement under which Grogan sold and assigned notes and the security securing the same to Allied on a discount basis under endorsements without recourse. The purchase price paid for such notes is referred to in the contract as net proceeds. A dealer reserve account was established pursuant to provisions of the contract. Grogan sued for an accounting of such reserve account and for the amount allegedly due it therefrom, with interest. The trial court, without a jury, entered judgment in favor of Grogan for $5,293.38, from which judgment Allied appeals.

The decision of the case depends upon the proper construction of the contract entered into by the parties. We quote the following pertinent paragraphs of such contract:

"A SUPPORTING Dealer Reserve as required under the Dealer Participation Plan shall be established through joint contributions by Dealer and by ABC. Dealer will pay to ABC, or ABC is authorized to deduct from the net proceeds due to Dealer, an amount equal to two percent (2%) of the net proceeds and such funds shall be held by ABC in the Dealer Reserve Account. In consideration thereof, ABC will contribute a like amount (2% of net proceeds) and credit same to said Dealer Reserve Account. ABC is authorized to charge against said Dealer Reserve Account the balance due on any note or notes in default for a period of 90 days. Notes charged against said Reserve Account shall be reassigned to Dealer Without recourse together with any collateral security. Recoveries that are made by Dealer on such reas-

signed notes are to be turned over to ABC for credit to the Reserve Account.

"IT IS THE INTENT of ABC and Dealer to build and maintain the Dealer Reserve Account to an amount at least equal to 10 percent (10%) of the outstanding balance due on the notes purchased hereunder, or $1,000.00, whichever is the greater. ABC shall render an annual accounting on or about November 30th of each year, showing all credits and charges to the Dealer Reserve Account during the preceding 12 months. ABC will pay to Dealer the balance in the Reserve Account in excess of the minimum reserve less the total balances due on notes which are 30 days or more past due.

"DEALER shall have the right to discontinue selling notes hereunder and ABC shall have the right to discontinue purchasing notes hereunder at any time upon the giving of written notice. In the event of discontinuance, refunds to Dealer from the Reserve Account shall be made only to the extent that the amount in said Reserve Account exceeds total outstanding balances due on notes purchased by ABC hereunder."

By letter dated October 13, 1953, Allied elected to discontinue purchasing notes from Grogan. Thereafter Allied charged certain notes to the dealer reserve account, and in some instances continued to make collections thereon after so charging them, but did not reassign all of such notes to Grogan. The trial court found that the total net amount of the notes, including the Ramirez note which was reduced to judgment, that were charged to the reserve account and which were not reassigned to appellee, amounted to $3,252.00, which is the amount in dispute on this appeal. Appellant, in its answer filed June 1, 1959, admitted that there was a balance in the Reserve Account of $1,280.00, and offered to pay such amount to appellee and to reassign said notes, if furnished with release of federal tax lien filed against Grogan.

The trial court concluded that as a matter of law Allied, by failing to reassign said notes to Grogan, waived its right under the contract to charge the same to the dealer reserve account, and that appellant's admitted liability of $1,280.00 should be increased by $3,252.00, representing the total amount of the unpaid balances on the notes that were not reassigned.

■ We agree with appellant that there was no waiver by it of its right to charge said notes to the dealer reserve account under the terms of the contract. Appellant had such right and exercised it. There was no intentional relinquishment by appellant of that right and hence there was no waiver of any kind by it. 13 Tex.Jur.2d 594, Contracts, § 330.

After appellant had charged such notes to the reserve account, it was obligated under the contract to reassign to appellee such notes and any security securing the same. This provision in the contract is a covenant on the part of appellant. The charging of the notes to the reserve account is not conditioned upon the reassignment of such notes and security. The provision in the contract is not a condition which would permit a forfeiture of the right to charge the notes, but is merely a covenant that such notes would be reassigned to Grogan after they had been charged to the reserve account.

■ The trial court erred in its conclusion that appellant had waived its right to charge the notes in question to the dealer account. The court found, however, that Grogan had made repeated demands on Allied for an accounting of the reserve account after October 13, 1953, but received no accounting or statement of account until on or about June 1, 1959, long after this suit was instituted, when Allied offered to deliver into the registry of the court the sum of $1,280.00 which it admitted to be due Grogan, and also belatedly offered to transfer and assign the Ramirez judgment and reassign the notes in question, most of which were then barred by limitation, con--

ditioned upon the federal tax lien filed against Grogan being released. The court concluded that Allied's admitted liability in the sum of $1,280.00 should be increased by the sum of $3,252.00. While no finding was requested and none was made as to the value of the notes in question charged to the reserve account, the court in finding Grogan entitled to recover the sum of $3,-252.00, representing the total unpaid balances of such notes, including the Ramirez note, impliedly found such amount to be the value of the notes and hence concluded that such amount should be added to Allied's admitted liability in the sum of $1,280.00.

■ Under Rule 299, Texas Rules of Civil Procedure, where one or more elements of a ground of recovery have been found by the trial court, omitted unrequested elements, where supported by the evidence, will be supplied by presumption in support of the judgment. Bednarz v. State, 1943, 142 Tex. 138, 176 S.W.2d 562; Dahse v. National City Bank of Waco, Tex.Civ. App., 234 S.W.2d 102, writ ref., n. r. e.; Wisdom v. Smith, 1948, 146 Tex. 420, 209 S.W.2d 164; Becker v. Schneider, Tex. Civ.App., 335 S.W.2d 850; Loggins v. Stewart, Tex.Civ.App., 218 S.W.2d 1011, writ ref.

The present suit was brought as a suit for an accounting of the transactions between the parties, and for the amount due Grogan from the dealer reserve account. Under the terms of the contract there could be no payment to Grogan until after the time it filed its suit when the notes were practically liquidated, since the contract provides that, "In the event of discontinuance refunds to dealer from the reserve account shall be made only to the extent that the amount in said reserve account exceeds total outstanding balances due on notes purchased by ABC hereunder." There is no evidence that Grogan was notified of Allied's conduct, in charging the notes in question to the reserve account and failing to reassign the same, or that Grogan knew or ought to have known thereof until appellant filed its answer on June 1, 1959, long after this suit for accounting was brought.

■ By failing to reassign the notes and securities to Grogan after charging them to the reserve account, Allied not only violated the terms of its agreement, but effectively prevented Grogan from taking any necessary action to collect the balances due on such notes. Had the reassignment been made as provided in the agreement, Grogan would have been required under the contract to pay into the reserve account any collections made by it, and such amounts would in the final accounting belong to Grogan. The trial court in its findings of fact found the net amounts of the unpaid balances on the notes in question at the time they were charged to the reserve account, and the dates when such charges were made. Such notes, all of which were secured, were prima facie evidence of at least the value found by the court. Appellant has no assignment complaining that the court's finding of the value placed upon such notes is not supported by some evidence or that such finding is against the great weight and preponderance of the evidence.

■ It is our view that the trial court did not err in crediting the reserve account with the aggregate amount of the unpaid balances owing on the notes. Such amount represents prima facie the loss that Grogan will sustain if such notes are not so credited, and the amount it should recover.

■ We have not found or been cited to any case directly in point. It would seem, however, that the amount to be credited to the reserve account can be determined by analogy to the general rule with respect to the amount of damages recoverable in an action brought for conversion or for breach of contract. The law is well settled that where one converts a note to his own use the measure of damages is prima facie the face value of the note, and it devolves upon the defendant to show that it was in fact of less value. Peerless Fire Ins. Co.

v. Barcus, Tex.Civ.App., 227 S.W. 368; Ramsey v. Hurley, 72 Tex. 194, 12 S.W. 56; Morris v. Smith, 51 Tex.Civ.App. 357, 112 S.W. 130; France v. Gibson, Tex.Civ.App., 101 S.W. 536; American Surety Co. of New York v. Hill County, Tex.Com.App., 267 S.W. 265.

 It has also been held that the measure of damages for breach of a contract to deliver notes is, in the absence of any further proof of the value of the notes, their face value. 25 C.J.S. Damages § 79, p. 587; Kennedy v. Hudson, 224 Ala. 17, 138 So. 282; Garrson v. American Diesel Engine Corporation, 310 Mass. 618, 39 N.E.2d 566; Caldwell v. Kuykendall, 94 Okl. 84, 221 P. 84; Standard Lumber Co. v. Deer Park Lumber Co., 104 Wash. 84, 175 P. 578; Wasser v. Western Land Securities Co., 97 Minn. 460, 107 N.W. 160.

It is true that the notes in question were delinquent more than 90 days and there is some evidence that Allied used diligence in making collections, but this is not proof that the notes were uncollectible or that they were of less value than the unpaid balances of such notes as found by the court. Appellee, having established prima facie the value of said secured notes at the time they were charged to the reserve account, was not required to proceed further in the absence of any evidence showing they were of less value.

The amount of damages sustained by Grogan from Allied's failure to reassign the notes and securities was a proper item to be considered by the court in adjusting the account. See 1 Am.Jur.2d, p. 429, Accounts and Accounting, Sec. 55, where it is stated:

"It has been said, furthermore, that where, in a suit in equity for an accounting, a claim for damages is one of the items in controversy, the court not only has jurisdiction of the subject, but is bound to ascertain and allow such damages before it can adjust the account and grant the proper relief."

There is no showing that the reserve account exceeded the total outstanding balances due on the notes purchased by Allied from Grogan, until October 30, 1958, and, therefore, under the terms of the contract, Grogan was not entitled to any payment from the reserve account until that date. Prior to that date Grogan had become subject to a federal tax lien, so that Allied, which was served with such lien, could not make payment to Grogan with impunity until such tax lien was released. We are of the opinion that the trial court erred in allowing interest as was done, and that the amount of $4,532.00 should bear interest from October 18, 1960, when such lien was released, to date of judgment, May 21, 1962, at the rate of 6% per annum, such interest amounting to $432.81, which, added to the sum of $4,532.00 makes a total of $4,964.81, representing the amount of the judgment as reformed, with interest thereon at the rate of 6% per annum from date thereof until paid.

Judgment of the trial court reformed and, as reformed, affirmed.