AGNEW v. KELSEY WHEEL CO.

1. CONTRACTS—PATENTS—LICENSE—INTERPRETATION.
   Where defendant had been granted an exclusive license to operate under a patent of certain electrical welding machines used in welding rims, its provisions granting to defendant the right to terminate the agreement but not granting such right to the plaintiff, the latter was not entitled to execute a further contract of license to other parties prior to such termination by the defendant.

2. SAME—WAIVER—QUESTION OF FACT—INTENT.
   Plaintiff, who claimed that the defendant had waived his right to rescind or terminate the contract, was entitled to have the question presented to the jury by a charge of the court as to defendant's failure to complain and as to evidence that upon failure to pay royalties plaintiff made a demand and defendant's secretary stated they had not been verified and that it at no time claimed that the contract was terminated; the question of waiver is usually a mixed issue of fact and law where there is any evidence tending to show an intent of the party to waive a right.

3. SAME—PATENTS—ROYALTY AGREEMENT—BREACH OF CONTRACT— ASSIGNMENT.
   Nor was defendant entitled to a peremptory instruction as against the plaintiff upon the ground that the plaintiff had failed to inform him that his application for a patent had been rejected, it appearing a patent had been granted in Canada and that proceedings were pending in the United States patent office for the perfection of such claim to a patent as plaintiff claimed he was entitled to; defendant not having elected to put an end to the agreement.

4. SAME—BREACH—ASSIGNMENT—LEASE.
   Nor was the contract breached by the assignment by the plaintiff of his rights subject to the defendant's license, which contained no prohibition or restriction against the transfer of the interest retained by plaintiff and where the rights of defendant company were sufficiently protected.

Error to Wayne; Mandell, J.   Submitted November 20, 1914.   (Docket No. 98.)   Decided April 6, 1915.   Rehearing denied October 29, 1915.

Assumpsit by Ray F. Agnew against the Kelsey Wheel Company on a royalty contract.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Dwight C. Rexford,* for appellant.

*Campbell, Bulkley & Ledyard* (*Charles H. L'Hommedieu,* of counsel), for appellee.

MOORE, J.   This is an action brought September 7, 1911, to recover four installments of $375 each, for royalties claimed to be due under a contract dated June 3, 1909.   From a judgment in favor of the plaintiff the case is brought here by writ of error.

The parts of the contract material to the questions raised are:

"Whereas the party of the first part is the inventor and designer, and sole owner, of certain new and useful improvements in electrical welding apparatus, the same being described in his application for U. S. letters patent serial No. 481,172, filed March 5, 1909, and other inventions which the said party now has and which he may hereafter make, relating to the same subject; and whereas the party of the second part is desirous of obtaining an exclusive license under said inventions and any patents that may be issued therefor in the United States or the Dominion of Canada, for use in the welding of channels, wheel rims or wheel tires.   *   *   *

"*Third.*   The party of the first part further agrees to manufacture, sell and deliver to the second party two 50 kw. welding machines, suitable for the welding of channels or wheel rims, such as used in carriage or automobile wheels, at the rate of four hundred per day, of ten hours each; such machines to be of good workmanship and material, and design. *   *   *

"*Eighth.*   In consideration of the license granted

and the agreements herein contained on behalf of the first party the second party hereto agrees to accept said two welding machines and to install them for use in its factory at Detroit, Michigan, upon receipt of same, and to employ the same for welding channels or wheel rims.

"*Ninth.* The party of the second part further agrees that it will pay to the party of the first part one thousand dollars each for such first two machines, one-half the purchase price to be paid to the first party as required during the building of the machines, and the balance as soon as the machines are set up and are in working order.

"*Tenth.* The party of the second part further agrees that it will pay to the party of the first part upon all wheel rims or channels which it shall use upon wheels which the second party shall manufacture or have manufactured for it and sell, a royalty of one and one-quarter cent per rim; and upon all rims or channels which the second party shall weld to be sold to other people separate from the wheels, a royalty of three cents per rim.

"*Eleventh.* The party of the second part agrees to account to the party of the first part, its successors or assigns, upon the first day of December, March, June and September, of each year, for all wheel rims or channels which it shall have welded upon said machines, and to accompany such report and statement with a remittance covering the royalties due at the rate specified; and the said second party agrees that the said royalty shall amount to at least three hundred and seventy-five dollars for each quarterly payment, up to September 1st, 1913.

"*Twelfth.* It is mutually agreed between the parties hereto that the second party may cancel this contract any time after September 1st, 1913; or prior to that date, in the event that the machines furnished shall fail to perform their work or in the event that the use of said machines is stopped because of patent litigation, or in the event that a patent is refused to the first party upon the said application serial No. 481,172 herein referred to."

Some controversy arose between the parties as to the breakdowns of the machines interfering with the

quantity of the work they could do, when the following paper was made:

"DETROIT, MICH. U. S. A. Jan. 3, 1910.
"K. H. WHEEL COMPANY,
               "Detroit, Mich.
"*Gentlemen:*
"I beg to advise that I have made some improvements on the mechanical parts for welding machines for welding rims and I am willing to furnish you with two improved machines and take back the two machines you now have without any expense to you, providing that I may draw against royalties due between now and March 1st.

"I will guarantee these machines to be of good workmanship and design and will replace free of charge any part in said machines that proves defective. Will use transformer now in machines and guarantee capacity as per agreement.
               "Yours very truly,
                         "R. F. AGNEW.
"Accepted.
     "FORD LAWRENCE.
     "WM. H. DUCHARME."

It is the claim of the plaintiff that he made certain changes in the machines, supplying new parts, which met the requirements mentioned in the paper of January 3, 1910, and that thereafter he never heard any complaint about the manner in which the machines did their work. He was paid royalties up to June, 1909, according to the terms of the contract. It is plaintiff's claim that when he interviewed the secretary of the company, who had charge of the office work, as to why the royalties were not paid after June, 1910, he was told, in substance, that the royalties due had not been checked up, and that he would proceed to check them up and ascertain the amount due, and that he was again told this at the office, and again over the telephone as late as in September. It is plaintiff's claim nothing was said indicating that defendant claimed the contract was ended, and that

no effort has ever been made to terminate the contract in the manner provided therein. The royalties were not paid, and this litigation followed, with the result before stated.

The court charged the jury at great length. Part of the charge is as follows:

"Gentlemen of the jury, the contract is plain in its terms, and it means exactly what it says, and whether the plaintiff understood it or misunderstood it, or whether the defendant correctly understood it or misunderstood it, that contract provided for the furnishing, among other things, of two new machines, and if there had been litigation then, at that time, over its terms, there would have been no case, but the plaintiff would have been bound, under the terms of the contract, to furnish two new machines, containing all the new improvements; but they went along and finally they reached the 1st day of March.

"This contract provided for the payment of royalties up to the 1st day of March, and they were paid, and apparently paid promptly, and, needing the machines and needing the work, the defendant went on using the old machines. The old machines belonged to the defendant all the time, and the plaintiff had no property rights in them whatsoever; the defendant had bought them and paid for them, but the defendant had no right to use them, except by reason of the provisions contained in the original contract, known as Exhibit 1. There the parties separated in their belief, so they say. Whether there was a real, or just an apparent, misunderstanding would be, in a measure, for you to say. The plaintiff claims that he believed and assumed that he had performed his contract when he repaired the machine by putting on a new head, or doing something else, to the other machine, and his theory is now that, as those machines were used, they must have been used understandingly and knowingly by the defendant under the terms of Exhibit 1, and that they were used from the 1st of March to the 1st of June, and royalties were paid, and it is too late for the defendant to claim that there was any other understanding of the terms of the contract than the one alleged now by the plaintiff. The de-

fendant's claim in that regard is this, that all the time it was waiting, thinking that they had been putting in these repairs to tide them over the time until the new machines would appear, and that they continued using the old machines with that understanding, relying upon the new contract to furnish two new machines, and their claim is that those two new machines were not forthcoming, and were not given to the defendant by the 1st day of June, and that it discontinued the payment of royalties and stopped using the machines and put them in storage, and that they have not used them since, and are under no obligations to pay for the use of them by reason of the failure of the plaintiff to perform his part of the contract of the 3d day of January.  *   *   *

"Now the old contract, which is still in existence and which is a contract entire, stands by itself, except as modified by the undertaking of the plaintiff in the writing of January 3d, provided for a method in which this contract could be terminated. It could have been terminated at any time by the defendant upon notice to the plaintiff that the machines were not doing their duty properly, or were not up to the specifications, promises, assurances, and warranties of the plaintiff himself. The claim of the plaintiff is that at no time has it received any notice from the defendant of its desire to terminate the contract, and that therefore the plaintiff had his property tied up in a way that he could not sell or dispose of the right to use similar machines to any one else, and that is his claim, and his claim is that he had a right to assume that, as he never received notice from the defendant of the termination of the contract for reasons that would be good reasons under the contract for its termination, and that therefore he had a legal right to assume that the contract was in full force and legal effect. The defendant, on the other hand, claims this with regard to the plaintiff's claim, that, at the interview either on the 3d day of January or the date preceding it, notice was given by the defendant's president to the plaintiff that they had quit, or used words of similar import, which the defendant claims meant that the contract was terminated, and terminated for reasons which would be sufficient under the terms of the contract, and that the new contract entered into

the following day or the same day, after an interview, was a new contract on the part of the plaintiff, and that, the plaintiff having failed to provide the new machines, the defendant is released. I cannot say, as a matter of law, that either one of those claims is sustained by the proofs because the question of waiver in a large degree is one for the jury where there is any testimony tending to show or support a claim of waiver, and the jury must determine what the intent of the parties was. * * * If there was a waiver, then I charge and instruct you, as matter of law, that the plaintiff is entitled to recover, because there is no showing that subsequent to the time of entering into this contract there was ever notice served directly on the plaintiff of the termination of the contract, and the only evidence that is urged as to notice is the question of the stoppage of the payment of the royalties, and that, gentlemen of the jury, may be considered as evidence, but not as conclusive evidence of it, because sometimes persons under obligations to pay royalties are unable, by reason of certain financial things that happen to them, are unable to pay, or they may be unable to pay for certain other reasons, but nonpayment in and by itself is not to be taken as conclusive evidence that the termination of the contract is sought by the parties bound by it.

"On the other hand, if you find that the defendant did not, either by declaration or by words, indicate to the plaintiff that it waived the right to have two new machines given to it as provided for by the contract of January 3d, then the plaintiff is not entitled to recover because he has not, in such an event, fulfilled his part of the contract, and the defendant would no longer be bound by the terms of either that contract or the general contract known here as Exhibit 1; so your verdict will be determined by your finding as to whether or not there was a waiver such as I have spoken of that would relieve the plaintiff of the obligation to furnish the two new machines that he was bound to furnish under that contract.

"If you find that there was such a waiver, then, gentlemen of the jury, the plaintiff is entitled to recover for such sums as are provided for as royalties in the contract up to the time of the commencement

of this suit, but no further. I charge you that distinctly, so that it may be of record that recovery is permitted only up to the time of the commencement of this suit. The plaintiff alleges that the sum totals now $1,746, including interest, $1,500 being the amount of the principal that plaintiff claims, and interest, at the rate of 5 per cent. from the time the payments were due up to date, $247. The form of your verdict will be that you find for the plaintiff in the sum mentioned, or that you find for the defendant no cause for action.

"I have not had opportunity to read the various requests to charge, as they were handed up so late. I charge you that the plaintiff did not perform his agreement of January 3, 1910. That is conceded by all the parties, and the burden of proof is upon the plaintiff to show that the defendant waived his performance of that agreement. The evidence of the waiver by the defendant of plaintiff's performance of his agreement of January 3, 1910, ought to be full and distinct before it should be received as satisfactory to you, because the agreement which is in writing ought not to be treated as waived by the defendant, unless there is full and proper proof of such waiver."

The counsel for appellant discusses the important questions under the following heads:

"The court erred in not directing a verdict for the defendant:

"(1) Because there was no evidence for the jury tending to show that defendant waived performance, by plaintiff, of the contract.

"(2) Because it appeared by undisputed evidence that plaintiff had breached the warranties contained in his second agreement.

"(3) Because plaintiff breached his contract by not informing defendant of the rejection of his application for a United States patent.

"(4) Because plaintiff breached his contract by assigning to the Agnew, now Michigan, Electric Welding Company, his invention and application for a patent, subject to the contract with defendant, whereby he lost control of the application."

Each of these propositions is discussed at great length. The first and second of them may be considered together. In doing so it should not be forgotten that defendant had been given the exclusive license to put out rims under plaintiff's invention. The contract also in terms provided how defendant might terminate it. It did not provide that Mr. Agnew might terminate it. It follows that until defendant terminated it, Mr. Agnew could not license some one else to make the rims.

We have also stated the claim of plaintiff as to the conduct of the parties after the second contract was made, and there is testimony tending to sustain this claim. The court has said:

"A waiver is a mixed question of law and fact, and each case must necessarily depend much upon its own peculiar circumstances and surroundings. It is a question for the court to determine whether there is any evidence tending to show a waiver; but, when there is any evidence, the jury must determine what the intent of the party was, as the question of waiver is usually one of intent, as indicated by the acts and declarations of the party." *Griswold* v. *City of Ludington,* 116 Mich. 401 (74 N. W. 663).

The record does not show an attempt to terminate the contract in the manner therein provided. See *Skinner* v. *Machine Co.,* 140 N. Y. 217 (35 N. E. 491, 37 Am. St. Rep. 540) ; *Hurd* v. *Gere,* 27 App. Div. 625, 50 N. Y. Supp. 235. We think there was an abundance of testimony to justify the court in refusing to direct a verdict.

3. It is said the plaintiff breached his contract by not informing defendant of the rejection of his application for a United States patent. It is one answer to this to say that Canadian patents have been granted, and that patent proceedings were pending in the United States at the time of the trial, and defendant

had not elected to terminate the contract as provided by its terms.

4. It is said plaintiff breached his contract by assigning the invention and application. The assignment was made to a company in which Mr. Agnew was a stockholder, and by its terms the rights of the defendant company were carefully protected.

Judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.