Murray W. Garsson *vs.* American Diesel Engine
Corporation & others.

Middlesex.    January 8, 1941. — January 27, 1942.

Present: Field, C.J., Donahue, Cox, & Ronan, JJ.

*Damages,* For breach of contract.    *Equity Jurisdiction,* To reach and
apply equitable assets, Specific performance.    *Contract,* Construction.
*Equity Pleading and Practice,* Appeal, Decree.    *Words,* "Debt."

Upon an appeal from a final decree in a suit in equity, where there had
been an order that the evidence be reported but the appellant in
writing had waived his right thereunder, stating that he relied on the
pleadings and "the documentary evidence," and there was not in the
record a report of the evidence or a statement by the trial judge of
findings of fact although what purported to be an exhibit, which was
not a part of the pleadings, was printed with the record, the only
question presented was whether the decree properly could have been
entered on the pleadings.

Under a contract requiring the defendant, within a specified time, to give
the plaintiff a note payable in instalments, the plaintiff, who had
fully performed the contract, upon the defendant's failure so to give
the note, acquired a cause of action against him which was for the
full amount of the note and was a "debt" of the defendant within
G. L. (Ter. Ed.) c. 214, § 3 (7).

A contract between a plaintiff and several defendants requiring the
defendants to cause a corporate defendant "to be the owner or exclu-
sive licensee" of certain patents, subject to an existing license granted
under one of the patents, until indebtedness of the corporation and
another defendant to the plaintiff should be satisfied, and providing
that "any royalty paid by" the corporation "to the owners or holders
of" the patents should not exceed a specified amount, meant that the
defendants had an option either to make the corporation the owner
of the patents or to make it exclusive licensee thereof, except that, in
the case of the patent already subject to license, the corporation was
to be made the owner.

A decree in equity enforcing a contract under which the defendant was
required to do one or the other of two acts was erroneous in ordering
him to do a specified one of them rather than the one he should choose;
the court could not substitute its choice for his.

Bill in equity, filed in the Superior Court on October
18, 1939.

The case was heard by *Hanify,* J.

*H. G. Crockett, Jr., (F. W. Andres* with him,) for the defendants.

*E. F. McClennen, (E. Williamson* with him,) for the plaintiff.

Cox, J.   The defendants are American Diesel Engine Corporation, a Massachusetts corporation hereinafter referred to as the corporation, Duplex Diesel Co., Inc., a Massachusetts corporation, and John J. McCarthy of Malden.   An agreement under seal was entered into between the three defendants and the plaintiff on September 8, 1939, for the settlement, without litigation, of claims of the plaintiff against the defendants.   The defendants agreed to cause all "McCarthy Diesel Engine patents" to be vested in the corporation, either as owner or as exclusive licensee, there to remain until the obligations of the defendants to the plaintiff were paid in full.   The corporate defendants agreed to pay the plaintiff $25,000 within thirty days.   The corporation agreed to give the plaintiff, within thirty days, its interest bearing note, dated September 8, 1939, for $23,000, "payable semi-annually commencing June 1, 1940 from its net earnings as computed in accordance with accepted accounting principles and before the payment of dividends on any class of stock," and after December 31, 1941, any balance was to be due and payable on demand. In consideration of the foregoing agreements, the plaintiff gave the defendants a general release of all demands.

The defendants made no payment and gave no note as agreed.   By the bill, which was filed on October 18, 1939, the plaintiff asked for the establishment of his debt, amounting in all to $48,000, with interest from October 9, 1939, and for the application in payment of his debt of various patents and patent rights of the defendants, which were the subject matter of the agreement between the parties.

1. The defendants appealed from the final decree granting the plaintiff relief.   There was an order that the testimony be reported (G. L. [Ter. Ed.] c. 214, § 24).   The defendants, however, in writing, waived their rights under this order and therein stated that for the purposes of ap-

peal, they rely upon the pleadings and "the documentary evidence." "Exhibit 1" is printed in the record and purports to be a memorandum of agreement made on August 11, 1939, between McCarthy and the corporation relative to certain patents.[1] There is no report of the evidence, and no statement of findings of fact was made by the trial judge. The only question presented on this state of the record is whether the decree properly could have been entered on the pleadings. The entry of the decree imports a finding of every fact essential thereto. *Novick* v. *Novick*, 299 Mass. 15. See *Romanausky* v. *Skutulas*, 258 Mass. 190, 194; *Abeloff* v. *Peacard*, 272 Mass. 56, 59; *Yoffa* v. *National Shawmut Bank of Boston*, 288 Mass. 422, 426.

2. The defendants contend that there was error in establishing the debt of the corporation in the sum of $48,000. They concede that there is an indebtedness of $25,000. The answer to this contention depends upon whether the failure of the corporation to give its note to the plaintiff, as promised, amounts to the creation of a "debt" within the meaning of G. L. (Ter. Ed.) c. 214, § 3 (7), by virtue of which, among other things, jurisdiction in equity is given over suits by creditors to reach and apply, in payment of a "debt," certain property and interests of the debtor. The first step in a proceeding of this character is the establishment of an indebtedness of the defendants to the plaintiff, and, in essence, this is an action at common law. *Stockbridge* v. *Mixer*, 215 Mass. 415, 418. Upon the failure of the corporation to deliver the note, the plaintiff's remedy is for a breach of the contract, *Loring* v. *Gurney*, 5 Pick. 15; *Hunneman* v. *Grafton*, 10 Met. 454, 459, and the amount of his damages is involved. It has been held that where goods are sold to be paid for by a note that is not given, the vendor is entitled to recover as damages the whole value of the goods, unless, perhaps, there should be a rebate of interest during the time of stipulated credit. "The damages are the price of the goods." *Stephenson* v. *Repp*, 47 Ohio St. 551, 554, 555. In a case where the defendant

---

[1] Exhibit 1 is not a part of the pleadings. — REPORTER.

promised to give the plaintiff his note for $100 in exchange for the plaintiff's withdrawal of an action against him and failed to give the note, it was held that the plaintiff was entitled to recover the actual damage sustained, "one hundred dollars, which the defendant promised. to pay." *Stoddard* v. *Mix*, 14 Conn. 12, 24. *Thomas Manuf. Co.* v. *Watson*, 85 Maine, 300, 301. In some cases it has been said that in an action for a breach of an agreement to execute and deliver a promissory note, the amount for which the note was to be given will be the prima facie measure.of the damages. *Standard Lumber Co.* .v. *Deer Park Lumber Co.* 104 Wash. 84, 98. *Wasser* v. *Western Land Securities. Co.* 97 Minn. 460, 466. See *Kennedy* v. *Hudson*, 224 Ala. 17, 21; *Bowman* v. *Branson*, 111 Mo. 343, 362.

In the case of *Woodbury* v. *Sparrell Print*, 187 Mass. 426, 428, 429, it was said that the word "debt," as appearing in the statute that was the predecessor of G. L. (Ter. Ed.) c. 214, § 3 (7), was used in its broad sense, and it was held that a claim for loss of rent under a covenant in a lease was a debt within the meaning of the statute. After the decision in that case and the amendment of the statute in question in another particular, it was held in the case of *H. G. Kilbourne Co.* v. *Standard Stamp Affixer Co.* 216 Mass. 118, that the word "debt" in the statute as amended did not include all actions founded upon a contractual liability, but included only debts as distinguished from mere claims for damages. In that case the *Woodbury* case is considered at length, and it is said .that there is nothing in that decision or in the reasoning of the opinion to warrant the extension of the statute to the breach of an executory contract involving wholly unliquidated damages. It was said, however, that the word "debt," as appearing in the statute, is .to be construed broadly rather than narrowly, and that it may comprehend not only liquidated demands where there is an express or implied promise to pay or an absolute duty raised by law to discharge, but also an agreement for the payment of money which will require some calculation or determination of extraneous facts before its exact amount can be ascertained, provided the debtor has made a dis-

tinct and binding promise to pay. *Stone, Timlow & Co. Inc.* v. *Stryker,* 230 Mass. 67, 72.

In the case at bar there was no express promise to pay. On the contrary, the promise was to give a note. We think that in an action for failure to keep such a promise, the damages would be the amount of the note. In the agreement of the parties the plaintiff released and discharged the defendants from all claims. We think that, by this agreement, it was within the contemplation of the parties that the plaintiff was to receive $48,000 for his release, to be paid, it is true, in two particular ways, $25,000 in cash and $23,000 by a note. There is an implication that the corporation, when it promised to give the note, must have expected that it would have to pay $23,000. It was said in *Stoddard* v. *Mix,* 14 Conn. 12, 24, hereinbefore referred to, that the plaintiff could have no other action than upon the special contract, and that at some time he was entitled to recover the actual damage sustained, "one hundred dollars [the amount of the note that was to be given], which the defendant promised to pay." In the case of *Kimpton* v. *Bronson,* 45 Barb. S. C. 618, 625, cited with approval in the *Kilbourne* case, it is said that the word "debt" has been differently defined, owing to the subject matter of the statutes in which it has been used. "Ordinarily, it imports a sum of money arising upon a contract express or implied . . . In its more general sense it is defined to be that which is due from one person to another, whether money, goods or services; that which one person is bound to pay or perform to another."

The general rule stated in the *Kilbourne* case has been referred to and followed. See *Stone, Timlow & Co. Inc.* v. *Stryker,* 230 Mass. 67, 72; *Williamson* v. *Williamson,* 246 Mass. 270, 273; *Bethlehem Fabricators, Inc.* v. *H. D. Watts Co.* 286 Mass. 556, 563. In the case of *Kirby* v. *Donovan,* 228 Mass. 86, 89, decided about four years after the decision in the *Kilbourne* case, Loring, J., who was a member of the quorum in the *Kilbourne* case, said that in that case it was decided that a bill to reach and apply does not lie to enforce a claim for breach of a contract where the dam-

ages are unliquidated. The court, in discussing the meaning of the word "debt," as used in other statutes, has had occasion to refer to that word as having a more "constricted significance" as used in the statute involved in the case at bar. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 247 Mass. 334, 341. *Union Market National Bank of Watertown* v. *Gardiner*, 276 Mass. 490, 495.

We are of opinion that the damages for the breach of the contract to give the note in the case at bar can be said to be liquidated within the definition of liquidated damages announced by Rugg, C.J., in *Cochrane* v. *Forbes*, 267 Mass. 417, 420, 421. It is to be observed that that case (decisions in which are also reported in 257 Mass. 135 and 265 Mass. 249) was a bill to reach and apply in payment of a debt, shares of stock owned by the defendants. In that case, the plaintiffs had paid the alleged debtors in advance for oil that had not been delivered. We are of opinion that there was no error in establishing the debt of the corporation in the sum of $48,000.

3. By the terms of the agreement, annexed to and made a part of the plaintiff's bill, the defendants warrant that they will cause the corporation to be the "owner or exclusive licensee" of all "McCarthy Diesel Engine patents" now issued or pending, subject to an existing license to Hug Motor Car Company; that said patents shall not be transferred, assigned or sold until the obligations to the plaintiff are paid in full; and that any royalties paid by the corporation to the "owners or holders of said McCarthy patents" shall not exceed five per cent of the sales price. The decree orders the defendants to perform the warranty by executing separate assignments of each of said patents and patent rights, and all options and licenses and rights to the corporation, subject to the existing license to Hug Motor Car Company, and subject to the provision as to the limitation of royalties to be paid, and recites that the corporation has an option to acquire the interest of McCarthy in that license. The decree further provides that if $48,000 with interest is not paid as ordered, the letters patent, licenses and options shall be delivered to a special master and sold

by him at public auction, and the master is empowered to execute in the name of each of the defendants any and all assignments, licenses, options or other documents "proper to carry out the purposes of this decree, and to vest in the purchaser at any such auction sale, title to the property sold thereat." It is further provided that the defendants shall execute separate assignments in proper form for recording in the respective patent offices from which said patents have issued or in which applications therefor are pending, and shall forthwith deliver said assignments to the special master.

The bill alleges that the corporation is the owner of certain patents and patent rights commonly described as the "McCarthy patents or the McCarthy Diesel Engine patents"; that said patents and the rights therein stand "to some extent" in the names of the corporation, Duplex Diesel Co., Inc., and McCarthy, and that under the terms of the agreement of the parties, they are, at law and in equity, the property of the corporation, and that the plaintiff is ignorant "as to which in said three names" the respective patents and rights stand. Certain patents are listed in the bill as "Among said patents." The decree recites that McCarthy is in law the owner of certain patents therein listed. The decree then provides for the assignment to the corporation of all "McCarthy Diesel engine patents" and of all options and licenses and rights, as hereinbefore set out.

The defendants contend that the agreement between the parties gave them the option of causing the corporation to be either the owner or the exclusive licensee of the patents in question subject to an existing license, and that the decree is in error in ordering assignments. It is to be observed that the decree requires assignments of the patents and other rights in disregard of the option as to licensing. The defendants contend that by the terms of "Exhibit 1," appearing in the record, McCarthy, on August 11, 1939, prior to the time when the agreement between the parties to this suit was made, that is, on September 8, 1939, had already constituted the corporation the licensee of the pat-

ents in question, and that the decree, in any event, is in error in that it takes away McCarthy's right to make the corporation the owner or exclusive licensee. But in the absence of a report of all the evidence, we cannot put ourselves in the position of the trial judge. It is true that the agreement between the parties provided that any royalty paid by the corporation shall not exceed five per cent of the sales price, and this seems to indicate that this royalty would be paid by the corporation as a licensee. Obviously, if it were the owner of the patents, it would not be paying any royalty. The decree also contains this provision as to "any royalty paid by American Diesel Engine Corporation." This provision appears to be inconsistent with the other provisions in the same paragraph where it appears, requiring separate assignments of all patents and other rights. An assignment of a patent differs materially from a license to use the invention. *Standard Button Fastening Co.* v. *Ellis*, 159 Mass. 448, 449. *Burton* v. *Burton Stock Car Co.* 171 Mass. 437, 439. *Good* v. *Daland*, 121 N. Y. 1, 8. The undertaking of the defendants either to assign or to license is different from a mere option that a party may have, as, for example, to purchase something. See *Conos* v. *Sullivan*, 250 Mass. 376; *Dooley* v. *Resnik*, 256 Mass. 205, 209; *Kelley* v. *Ryder*, 276 Mass. 24. In the case at bar, however, the obligation of the defendants is to do one thing or the other. The court cannot substitute its choice for that of the defendants who have that right. It seems obvious that one cannot be made an exclusive licensee subject to an existing license. *Agnew* v. *Kelsey Wheel Co.* 185 Mich. 340, 348. It is obvious that if the corporation was made the owner of the patent under which Hug Motor Car Company is already a licensee, there would be no royalty to be paid by the corporation. If it were not for the provision in the decree as to any royalty paid by the corporation, the problem would be presented in a different light. But this provision as to the payment of royalty seems to recognize the existence or creation of licenses, the option to give which was provided for in the agreement between the parties.

We are of opinion, accordingly, that the most that can

be required of the defendants is an assignment of such patents as are now subject to an existing license to Hug Motor Car Company and also an order that the defendants cause the corporation to be either the owner or the exclusive licensee of all other "McCarthy Diesel engine patents," and that if licenses are given, the royalty to be paid shall not exceed five per cent of the sales price. We assume that this reference to "sales price" in the agreement, as well as in the decree, is to the sale of articles that may be manufactured under licenses. The decree should be modified accordingly not only as to the matter of assignment and licensing, but also so as to provide that it is the licenses and the assignment of the patent, now subject to the license to Hug Motor Car Company, that are to be sold. The decree should also contain a provision that McCarthy's rights to a royalty of not more than five per cent are preserved.

The defendants make no contention that their interests, as provided for in the agreement between the parties, cannot be reached and applied in satisfaction of the plaintiff's debt.

The decree as modified in accordance with this opinion is affirmed.

*Ordered accordingly.*