NEW AMSTERDAM CASUALTY COMPANY *vs.* BURNETT ESTES & another.

Suffolk.   May 3, 1967. — June 30, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, & SPIEGEL, JJ.

*Jurisdiction,* Forum non conveniens.   *Equity Pleading and Practice,* Motion, Judicial discretion.

Rule 46 of the Superior Court (1954) does not require that a motion be supported by an affidavit in order for the judge to pass upon it, but empowers him to require one if the facts upon which he should consider the motion do not otherwise appear "upon the record and files." [96] The right of a resident of a State to enforce in that State the obligations

---

of a nonresident is subject to the considerations of policy underlying the doctrine of forum non conveniens. [97–98]

In the circumstances, a judge properly allowed as a matter of discretion a motion to decline jurisdiction on the ground of forum non conveniens of a suit in equity by a foreign corporation doing business in Massachusetts against a Massachusetts corporation and an individual resident of Texas seeking a determination of alleged present and future liability to the plaintiff of the individual defendant under an agreement to indemnify it for any loss on bonds issued by it guaranteeing to the owners and financers of uncompleted Texas construction projects performance by a Texas construction company, with which the individual defendant was associated, of its building contracts in connection with such projects, and a determination that the corporate defendant would suffer no loss covered by a prior agreement which the individual defendant had made with it to indemnify it for any loss on bonds issued by it on behalf of another Texas company and which was secured by a lien of the corporate defendant, superior to any claim of the plaintiff, on stock of the individual defendant held by the corporate defendant, and seeking to reach and apply such stock in satisfaction of the individual defendant's alleged liabilities to the plaintiff. [98–99]

Bill in equity filed in the Superior Court on November 8, 1965.

A motion to decline jurisdiction was allowed by *Kalus*, J.

*Avram G. Hammer* (*Samuel H. Cohen* with him) for the plaintiff.

*Robert J. Sherer* for the defendant Estes.

*Ronald F. Kehoe* (*Lewis L. Wadsworth, Jr.,* with him) for the defendant American Employers Insurance Company.

Spiegel, J. This bill in equity by an issuer of certain surety bonds, as to which the defendant Estes is an indemnitor, seeks to reach and apply in satisfaction of any present or future liability of Estes to the plaintiff certain shares of stock owned by Estes but in the possession of the defendant American Employers Insurance Company (American). The only service on Estes, a resident of Dallas, Texas, was substituted service of notice pursuant to Rule 14 of the Superior Court (1954).[1]

American filed a motion "that the Court decline to take jurisdiction of this case for the reason that complete jus-

---

[1] Estes appeared specially and filed a motion to dismiss for lack of jurisdiction. Neither this motion nor a demurrer filed by American was acted on.

tice cannot be done by this Court retaining jurisdiction, that the defendant, American . . ., will be subjected to great and unnecessary inconvenience and expense and that the trial will be attended, if conducted here, with many if not insuperable difficulties which all would be avoided without special hardship to the plaintiff if proceedings were brought in the State of Texas." The plaintiff appealed from the judge's allowance of this motion and from the final decree dismissing the bill.

The following relevant facts appear from the allegations in the bill. The plaintiff is a New York corporation, having a usual place of business in Boston, and engages in the insurance business. American is a Massachusetts corporation with a usual place of business in Boston and also engages in the insurance business. Estes, "on or about June 27, 1963, and for some time prior thereto . . . was interested in and associated with . . . Clarence H. Everett & Co., Inc., of Dallas, Texas, . . . [Everett Co.] [which] was and is engaged in the construction business." On or about June 27, 1963, Everett Co. applied for surety bonds to be issued to the owner and financer of a certain construction project in Dallas, Texas, to guarantee the performance by Everett Co. of its construction contract, "and further guaranteeing the payment of all suppliers of labor and/or materials furnished and/or delivered in the course of said construction." Everett Co. agreed to indemnify the plaintiff "and save it harmless against all liability, loss . . ." whereupon the bonds were issued. Similar bonds were issued in connection with two other construction projects undertaken by Everett Co. The payment bonds were required by Texas law to be furnished and their terms and conditions were fixed by statute.

Estes joined with Everett Co., Clarence H. Everett (Everett), a principal of Everett Co., and Everett's wife in executing an agreement of indemnity with the plaintiff covering all losses and liabilities sustained by the plaintiff in connection with the issuance of the bonds.

None of the projects has been completed. Forty-four

claims and notices of liens aggregating the sum of $466,732.82 have been filed by unpaid suppliers of labor and material of Everett Co. against the three payment bonds. Four such claimants have filed suits in the State courts of Dallas County, Texas. The plaintiff expects to become responsible for additional obligations of Everett Co.

The plaintiff alleges that Everett Co. has violated its obligations on the surety bonds by failing to pay these various claimants, and that numerous demands have been made by the plaintiff on Everett Co. to pay those claimants. Consequently, the plaintiff claims to be entitled to exoneration and indemnification by Estes, pursuant to his agreement.

American holds certain shares of stock, owned by Estes, as security for the performance of his agreement to indemnify American against its losses on bonds issued by it on behalf of one Almond Electric Company of Dallas. This indemnity agreement was executed April 15, 1955, and the stock was assigned and pledged on October 26, 1959, and delivered to American on January 14, 1960. The plaintiff acknowledges that its rights are subject to American's prior lien.

1. The jurisdiction of the Superior Court to hear this suit is grounded in G. L. c. 214, § 3, which states in material part, "The . . . [Superior Court] shall have . . . jurisdiction in equity of the following cases: . . . (7) Suits by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution in an action at law." Estes argues that jurisdiction cannot be founded on this section because "[t]he plaintiff's claim against Estes 'for exoneration and indemnity' could not be the subject matter of an action at law, but is, if anything, a purely equitable proceeding. As such, it does not come within the provisions of G. L. c. 214, § 3 (7). . . . *Garsson* v. *American Diesel Engine Corporation,* 310 Mass. 618." The plaintiff, on the other hand, argues that the existence of a

debt "is sufficiently alleged in the bill of complaint. It is not necessary that the bill allege a legal as distinguished from equitable claim. . . . *Ginn* v. *Almy,* 212 Mass. 486. . . . Nor is it required that the claim be reduced to a certainty," citing the *Garsson* case, in which we said at pp. 621–622, "[T]he word 'debt,' as appearing in the statute, is to be construed broadly rather than narrowly, and . . . may comprehend not only liquidated demands . . . but also an agreement for the payment of money which will require some calculation or determination of extraneous facts before its exact amount can be ascertained, provided the debtor has made a distinct and binding promise to pay." The plaintiff points out that, "[i]n the case at bar, the bill sets forth a binding agreement by Estes to indemnify the plaintiff against any claims arising out of the bonds in question, and describes claims in liquidated amounts against the bonds because of the principal obligor's failure, after demand, to pay its suppliers. . . . The defendant's obligation, being calculable and presently enforceable, is a debt within the meaning of the statute."

In view of our disposition of this case it is not necessary for us to decide whether the plaintiff's claim against Estes is a "debt" within the meaning of G. L. c. 214, § 3 (7). We shall assume for the purpose of this decision that the court did have jurisdiction.

2. American's motion to dismiss was grounded on the doctrine of forum non conveniens. In the case of *Universal Adjustment Corp.* v. *Midland Bank, Ltd.* 281 Mass. 303, 313, we discussed this doctrine in some detail. "Where it appears that complete justice cannot be done here, that the defendant will be subjected to great and unnecessary inconvenience and expense, and that the trial will be attended, if conducted here, with many if not insuperable difficulties which all would be avoided without special hardship to the plaintiff if proceedings are brought in the jurisdiction where the defendant is domiciled, where service can be had, where the cause of action arose and where justice can be done, our courts decline to take jurisdiction on the general

ground that the litigation may more appropriately be conducted in a foreign tribunal. Stated succinctly, the principle is that where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum.'' See *Green* v. *Green,* 351 Mass. 466, 471–472.

The doctrine has received support in numerous jurisdictions (see cases collected in 87 A. L. R. 1425, at 1434–1440; 90 A. L. R. 2d 1109). The essential elements to be considered by the judge were aptly stated in the case of *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 508–509: ''Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses. If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Factors of public interest also have place in applying the doctrine. Administrative dif-

ficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the county where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself'' (footnotes omitted).

3. The plaintiff argues that ''it was improper to allow the motion to decline jurisdiction in the absence of any answer, affidavit, or evidence showing a dispute of fact as to . . . Estes' indebtedness, or showing the manner in which . . . American would be inconvenienced.'' It is true, as the plaintiff states, that ''[n]o affidavit was filed under Rule 46 of the Superior Court in support of American's motion that the court decline jurisdiction, and no evidence was taken.'' Rule 46 states in material part, ''The court need not hear any motion, or opposition thereto, . . . unless the facts are verified by affidavit, or are apparent upon the record and files.'' However, we believe that the facts alleged in the bill and the reasonable conclusions which may be drawn from those facts provided an adequate basis for the judge to consider American's motion. The rule does not require that a motion be supported by an affidavit in order for the judge to pass upon it. *Donovan* v. *Donovan,* 294 Mass. 94, 97. *Nagle's Case,* 310 Mass. 193, 198. It gives the judge the power to require such an affidavit if the facts upon which he should consider the motion do not otherwise appear ''upon the record and files.''

The plaintiff suggests that the allegations as to Estes' liability be taken as true and therefore ''the only issues to be tried would be whatever questions either defendant

raises with respect to the location of the . . . stock in Massachusetts, and the extent of Estes' equity in that stock.'' However, we do not consider American's motion to have the effect of admitting Estes' liability to the plaintiff. The motion was based on the representation that it would be inconvenient to litigate that very issue in the courts of this State.

4. The plaintiff also contends that ''the motion to decline jurisdiction was improperly allowed because the plaintiff is a 'resident' of Massachusetts and jurisdiction therefore exists under G. L. c. 214, § 3 (7) as a matter of right, not of comity.''

In *Universal Adjustment Corp.* v. *Midland Bank, Ltd.* 281 Mass. 303, 314–315, we discussed several cases in which jurisdiction was declined and stated that ''[t]hey show clearly that domestic residence of parties is not decisive in requiring courts to assume jurisdiction of a cause, but that the basis of inquiry will be whether justice can be as well done here as in another jurisdiction to which parties may have access.'' This language eliminates any doubt that the result in that case was not determined by the treatment of the cause of action on the same footing ''as if brought by one foreign corporation against another foreign corporation, neither having a place of business within the Commonwealth, where attachment of funds of the latter has been made by trustee process served upon corporations having places of business within the Commonwealth'' (*Universal Adjustment Corp.* v. *Midland Bank, Ltd., supra,* 312) and where the plaintiff was a Massachusetts corporation formed especially to accept an assignment of certain claims held by a foreign bank. This language also shows that the rule set out on p. 312 that ''in general residents of a State may resort to its courts as of right to enforce obligations personal to themselves arising in either tort or contract against nonresidents, provided jurisdiction over them can be obtained,'' is subject to the considerations of policy underlying the doctrine of forum non conveniens, and does

not necessarily shield the plaintiff in the instant case from the operation of that doctrine.

5. We turn, finally, to the question whether the judge was justified in exercising discretion to decline jurisdiction on the facts apparent from the record. The bill discloses a controversy arising out of an agreement of indemnity, entered into in Texas and concerning performance and payment bonds for various Texas construction projects. The terms of some of those bonds are prescribed by Texas law. The establishment of Estes' liability to the plaintiff, which does not appear to be admitted, cf. *Bethlehem Fabricators, Inc.* v. *H. D. Watts Co.* 286 Mass. 556, 563, would in all likelihood require the testimony of numerous suppliers of labor and materials for the Texas construction projects. It is fair to assume that these suppliers would find it far more convenient to appear in the courts of Texas than in the courts of this Commonwealth. The principal obligor, Everett Co., is not a party to this suit.

Furthermore, the bill asks the court to determine that American will suffer no loss covered by Estes' indemnity agreement respecting bonds issued in behalf of Almond Electric Company, another Texas corporation. As American points out, "[i]n order to make such a determination, a Massachusetts court would have to consider evidence which would perforce include the books and records of Almond Electric Company and of whole constellations of obligees and claimants, none of whom are parties to this bill. Presumably, many or all are not amenable to the process of our courts." Thus it appears that the sources of proof are relatively inaccessible in this Commonwealth, that unwilling witnesses could not be compelled to attend the trial and that, even if witnesses and documentary evidence could be produced, it would only be at great expense and inconvenience. *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.* 233 Mass. 522, 525–526. Cf. *Trojan Engr. Corp.* v. *Green Mountain Power Corp.* 293 Mass. 377, 385; *Lydia E. Pinkham Medicine Co.* v. *Gove,* 298 Mass. 53, 58; *Wolfman* v. *Modern Life Ins. Co.* 352 Mass. 356, 367.

There is no suggestion in the record or brief of the plaintiff that Estes will be unable "to respond to a judgment" if suit is brought in Texas (see *Trojan Engr. Corp.* v. *Green Mountain Power Corp., supra,* on p. 385) or that the plaintiff will be any more inconvenienced by a trial in the courts of that State than by a trial in this Commonwealth.

The principle of forum non conveniens "manifestly ought to be applied with caution." *Universal Adjustment Corp.* v. *Midland Bank, Ltd., supra,* p. 315.

Considering all of the circumstances of this case, we cannot say that the judge did not give proper weight to the requisite factors in concluding that the controversy obviously may be more suitably tried in another forum.

*Decree affirmed.*