van Gestel, J.
This matter comes before the Court on three motions to dismiss the complaint: Defendant MarketXT Holdings Corp.’s Motion to Dismiss (Paper #14); Empyrean Reach and Apply Defendants’ Motion to Dismiss (Paper #16); and Reach and Apply Defendants Bank of America, N.A. and Banc of America Securities LLC’s Motion to Dismiss (Paper #18). All three motions make similar arguments, although the defendant, MarketXT Holdings Corp. (herein called “Tradescape”), has some issues specific to it.
In this memorandum the plaintiffs collectively will be called “TRK”; the reach and apply defendants Empyrean Investment Fund, L.P. and Empyrean General Partner LLC collectively will be called “Empyrean”; and the reach and apply defendants Bank of America, N.A. and Banc of America Securities LLC collectively will be called “BOA.”

BACKGROUND

There is pending and unresolved an action entitled Tanzman, Rock & Kaban, LLC et al. v. Tradescape Corp. et al., in the Supreme Court of New York, New York County, Index No. 600906/03 (the “New York *391 action”). The New York action was filed in March of 2003.
In the New York action the same plaintiffs as here sued Tradescape Corp., its Chief Executive Officer and its Vice Chairman. The New York complaint presents three causes of action: First Cause of Action, for breach of contract; Second Cause of Action, for fraud; and Third Cause of Action, for breach of fiduciary duty.
The TRK parties were day traders who became involved with an entity known as Momentum Securities, L.L.C. (“Momentum”). Tradescape was the sole beneficial owner of Momentum. Momentum principally earned its revenues from charges on day traders’ securities trades. The elaborate and convoluted details of the arrangements between Momentum and the TRK parties need not be recited here. Suffice it to say, however, that by early 2002, Momentum had obligations running to TRK in the vicinity of $49,493,000, and Momentum and its beneficial owner were in financial straits and needed additional operating capital.
The situation, as described in Paragraphs 32 through 37 of the New York complaint, follows:
32. After lengthy negotiations, on or about April 8, 2002 Plaintiffs, Tradescape and Momentum entered into an agreement (the “April 2002 Agreement”) intended to modify the existing TRK Agreements in various ways so as to relieve Momentum of certain significant cash obligations which it might have to Plaintiffs as a result of Tradescape’s potential sale of all or a significant portion of its ownership interest in Momentum.
33. The April 2002 Agreement provided that, if Tradescape made a sale within the next 120 days (the “Effective Period”), it would pay the Plaintiffs $10 million in “Put Consideration” in return for the Plaintiffs’ release of any and all other claims for consideration that the Plaintiffs might otherwise have under any of the other TRK Agreements as a result of the sale.
34. The April 2002 Agreement further provided that the Put Consideration was payable to Plaintiffs in the same form and pursuant to all the same terms, timing, contingencies and restrictions applicable to any person entitled to receive consideration from the sale of Momentum, whether or not Tradescape or anyone else in fact received any such sale consideration.
35. In addition, the April 2002 Agreement provided that, conditioned upon closing of the sale of Momentum and payment to the Plaintiffs of the Put Consideration, the $49,493,000 balance of the $54,493,000 First Put Price would be reduced to $33,500,000. The April 2002 Agreement also provided that, again conditioned upon the sale of Momentum and payment to Plaintiffs of the Put Consideration, Plaintiffs waived any and all claims for commissions or settlement adjustments otherwise due them through March 31, 2002.
36. Effective as of April 10, 2002 Tradescape and certain of its subsidiaiy companies entered into a written agreement with E*Trade Group, Inc. (“E*Trade”) and certain of its subsidiaiy companies (the “Merger Agreement”) pursuant to which Tradescape agreed to sell and E*Trade agreed to buy all of Tradescape’s ownership interest in Momentum and certain other Tradescape subsidiaries for an initial fixed payment of $100,000,000 in E*Trade common stock, with the possibility of significant subsequent payments based on Momentum’s profitability.
37. On June 3, 2002 an initial closing (the “Closing”) took place under the Merger Agreement and, on information and belief, on or after that date Tradescape received possession of approximately 11.75 million shares of E*Trade common stock (the “Initial E*Trade Shares”) as its initial fixed payment of the purchase price for the sale of Momentum and other subsidiaries.
TRK was not, and has not yet been, paid the amounts it claims it is owed as a result of the sale of Momentum, and that is what the New York action is all about.
Because TRK was to be paid in the same manner as Tradescape on the sale of Momentum, it expected, and expects, its payment to be in the form of E*Trade common stock. That common stock, however, is alleged to have moved on from Tradescape, first to the Empyrean parties in Boston, and then on to the BOA parties, perhaps in New York. The manner of the movement of the E*Trade common stock is shrouded in corporate entanglement and agreements which, again, need not be recited here.
The suit in Massachusetts was filed on December 17,2003, about nine months after the filing of the New York action. The Massachusetts suit concerns efforts by TRK, through reach and apply remedies, to seize the E*Trade stock or freeze its further transfer, all as security for the judgment it hopes to obtain in the New York action. In an “Introduction” to the Massachusetts complaint the TRK parties recite that they “seek[ ] preliminary and permanent injunctive relief to restrain further transfer of (1) 9,400,000 shares of E*Trade Group, Inc. common stock, (2) any interest in those shares, or (3) any other assets owned by defendant MarketXT Holdings Corp., (f/k/a T Corp., Tradescape Corp. and Tradescape.com, Inc. . . .) and pledged by Tradescape in Massachusetts as collateral for a loan to it from Reach and Apply Defendants Empyrean ...”
The complaint further alleges that TRK is informed and believes that the Empyrean parties re-transferred the E*Trade shares to BOA.[3]
*392 There are three counts in the Massachusetts complaint: Count I seeking Pre-Judgment Security for Prospective Domesticated Foreign Judgment; Count II seeking Enforcement of Judgment in New York Action; and Count III to Reach and Apply.

DISCUSSION

On a Rule 12 motion the movants must admit all well-pleaded allegations of TRK’s complaint, and the Court must accept as true such inferences as may be drawn in TRK’s favor. Blank v. Chelmsford Ob/Gyn P.C., 420 Mass. 404, 407 (1995); Natick Auto Sales, Inc. v. Department of Procurement and General Services, 47 Mass.App.Ct. 625, 630 (1999). Of course, conclusions of law from the facts alleged are open for review on a Rule 12 motion. TRK’s claims are sufficient unless they show beyond doubt that no provable set of facts would entitle TRK to relief. Warner-Lambert Company v. Execuquest Corporation, 427 Mass. 46, 47 (1998); Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 68 (1992). TRK bears a “relatively light burden,” Warner-Lambert Co., supra 427 Mass, at 47, and must be given the benefit of any doubt. Kipp v. Keuker, 7 Mass.App.Ct. 206, 210 (1979). These are “generous principles,” and the Court must apply them in the way they are intended. Connerty v. Metropolitan District Commission, 398 Mass. 140, 143 (1986).
As noted above, Tradescape, as the defendant, raises some different issues from those of Empyrean and BOA, as the reach and apply defendants. However, the controlling law applies with essentially equal force on the reach and apply defendants. Consequently, the Court will deal with all issues together.
Tradescape challenges the complaint in reverse order, starting first with Count III entitled “Reach and Apply.” Aside from repeating the previous factual allegations of the complaint, Count III consists of a single paragraph that reads as follows:
Plaintiffs shall be entitled to reach and apply the Tradescape Collateral, or any and all interests of Tradescape therein, and any other assets ofTradescape located in the Commonwealth of Massachusetts, including any other E*Trade shares owned by Tradescape, that are in the possession or control of Tradescape or any of the Reach and Apply Defendants in satisfaction of the prospective judgment to be entered in this action.
In pressing this “claim,” the TRK parties rely, as they must, on Massachusetts reach and apply law, which in its broadest form is codified at G.L.c. 214, Sec. 3(6). The statute reads:
The supreme judicial and superior courts shall have original and concurrent jurisdiction of the following cases: . . .
(6) Actions by creditors to reach and apply, in payment of a debt, any property, right, title, or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor independently of any other person or cannot be reached and applied until a future time or is of uncertain value, if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court. . .
Thus, the Court must determine whether the elusive E*Trade stock in issue may be considered property reachable by TRK as “creditors” in payment of a “debt” owed to them by Tradescape.
Both the complaint in this Massachusetts case and the complaint in the New York action[4] make clear beyond doubt that there is not yet any judgment in the New York action, it being correctly alleged as “prospective.” Consequently, what this Court must do is determine whether what is presented constitutes a “debt.”
The TRK parties must allege facts showing that Tradescape owes a debt to them and that Tradescape has property — here the E*Trade shares — that can be reached by TRK in satisfaction of Tradescape’s debt. See, e.g., Papamechall v. Holyoke Mut. Ins. Co., 8 Mass.App.Ct. 849, 852 (1979); Garsoon v. American Diesel Engine Corp., 310 Mass. 618, 621-22 (1942); H.G. Kilbourne v. Standard Stamp Affixer Co., 216 Mass. 118, 121 (1913).
A somewhat helpful, although not necessarily binding, history of Massachusetts reach and apply law, and particularly G.L.c. 241, Sec. 3(6), may be found in a recent decision by U.S. Magistrate Judge Collings in Hunter v. YouthStream Media Networks, Inc., 241 F.Sup.2d 52 (D.Mass. 2002). There, Judge Collings responded to the plaintiffs argument that “ajudgment is no longer required in Massachusetts for an equitable injunction to issue,” by observing that “[w]hile the principle may be valid, the cases make clear that it is applied in extremely limited circumstances ...” The principle being discussed was the plaintiffs contention that “all that is necessary is that he ‘show that his remedies at law have been exhausted without providing relief, or that resort to a legal remedy would be futile.’ ” Id. at 54.
Here, however, somewhat like in Hunter, “there has been no determination as to what, if anything, is owed by [Tradescape] to [TRK].” Id. at 55. See also In re Rare Coin Galleries of America, Inc., 862 F.2d 896, 904 (1st Cir. 1988). Indeed, there is a hotly contested battle ongoing in the New York action, as revealed in materials filed there on summary judgment issues under consideration.[5] This is made particularly clear in the February 10, 2004, Affidavit of Omar S. Amanat, former Chief Executive Officer of Tradescape.
This Court concludes that what is presented by the New York action is not a “debt,” or at least not the kind of “debt” contemplated by G.L.c. 214, Sec. 3(6). Consequently, the reach and apply claim in Count III, *393 assuming it to be a recognized cause of action, cannot stand.
Count II seeks the enforcement of “judgment in the New York action.” That judgment, however, has not entered, and may never enter. It is premature to seek its enforcement at this time. Count II has no legs and must be dismissed.
Finally, Count I asks for pre-judgment security for a prospective domesticated foreign judgment that does not now exist, and may never exist. This Count stands in no better shoes than in Count II.
There is another factor to be considered, although it is not by any means controlling on the issues presented: Justice Cahn has before him the first filed New York action that involves the real substance of the claims between TRK and Tradescape; and presumably, all of this is to be governed by New York law, with which Justice Cahn deals on a daily basis.
This Court, in Massachusetts, by contrast, only has before it an action seeking a form of security for the judgment that Justice Cahn may, or may not, render.
In making its decision here, this Court must, to some extent at least, consider and apply New York law. It is fully capable of doing so. But, this Court’s rulings can only be assessed by the Massachusetts Appeals Court and the Massachusetts Supreme Judicial Court. The latter two appellate courts are, also, fully capable of assaying and applying New York law. But, what neither this Court nor the Massachusetts appellate courts may properly do is expand upon, change or modify the particular New York law that may apply to whatever the facts of this dispute turn out to be. The latter is the province of, initially, Justice Cahn and, much more appropriately, those New York appellate courts that may be asked to review his rulings.
Considerations of judicial economy in two busy courts, each well able to handle the various aspects of this case, warrant serious consideration. It is not in any way economic for the parties, or the courts of New York and Massachusetts, each to be grappling with and deciding what may turn out to be overlapping issues involving the same complex contracts and matters. And, when the overlay of New York law is required, it seems much more appropriate for the proceedings to be conducted by a New York judge who can interpret his own state’s laws and whose rulings New York’s appellate courts can review.
On the peripheral issue of pre-judgment security, New York has ample laws on the issue, and the key parties already are before the New York Court, or can be brought there if needed. Further, this Court was told by a responsible member of the bar and an officer of this court that the principal asset in question — the E*Trade stock — is now located with one of the BOA parties in New York. There is no real need to proceed with satellite litigation in Massachusetts.

ORDER

For the foregoing reasons, each of the following motions is ALLOWED: (1) the Defendant MarketXT Holdings Corp.’s Motion to Dismiss (Paper #14); (2) the Empyrean Reach and Apply Defendants’ Motion to Dismiss (Paper #16); and (3) the Reach and Apply Defendants Bank of America, N.A. and Banc of America Securities LLC’s Motion to Dismiss (Paper #18). Judgment shall enter dismissing this action accordingly, with each party to bear his or its own costs.

At oral argument on the motions, counsel for the BOA parties asserted that the E*Trade shares, or at least some of them, are now with BOA in New York. The TRK parties responded with uncertainty.

The complaint in the New York Action is attached as Exhibit “A” to the complaint in the Massachusetts case and is specifically “incorporated [therein] by reference.” See complaint Para. 13.

Although beyond the four corners of the complaint, these materials were presented to' the Court by the TRK parties themselves, not by the moving parties on the motions to dismiss. This Court, therefore, does not consider it inappropriate to consider what the parties opposing the motions have presented.